JOURNAL ENTRY AND OPINION
{¶ 1} Defendant-appellant Anthony Cameron appeals the decision of the Cuyahoga County Court of Common Pleas denying his motion to suppress. Finding no error in the proceedings below, we affirm.
 {¶ 2} In this case, the appellant, Anthony Cameron, filed a motion to suppress, and a hearing was held. At the suppression hearing, the evidence revealed that an arrest warrant was issued for Edward Cameron, appellant's nephew. Edward Cameron was believed to be involved in the shooting of a family of thirteen, in which a little girl and her father were injured. The shooting occurred five days earlier. Edward Cameron was known to be armed and dangerous. He was a suspected gang member.
 {¶ 3} The police discerned the best possible address for Edward Cameron was 3511 West 125th Street, the upstairs portion of a double home, in the city of Cleveland. That address was given by Edward Cameron to his juvenile probation officer, as well as to C.M.H.A. on a prior date.[1] The double was owned by appellant, *Page 4 
who lived in the downstairs portion of the structure at 3513 West 125th Street[2]. Appellant was not wanted in connection with the shooting.
 {¶ 4} In the early morning hours of April 20, 2006, Detective Bush of the Cleveland Police Department conducted surveillance of both 3511 and 3513 West 125th Street (sometimes referred to as "3511" and "3513" herein) because the front doors of both residences were side by side. Detective Bush testified that he observed several males on the front porch at approximately 3:30 a.m. and believed one of the males to be Edward Cameron.
 {¶ 5} At approximately 6:00 a.m., members of the Cleveland Police Department approached 3511 West 125th Street to execute the arrest warrant for Edward Cameron. The police officers were preparing a perimeter around the house when Detectives Bush and Alexander began to move up the driveway to the front doors of the house. Detective Bush claimed that while approaching the house from the driveway, he heard a dog barking in the backyard and a man and a woman arguing. Detective Bush also stated that he saw a man appear outside the door of *Page 5 
3513. The detectives yelled "police," and the male ran back into the residence. At this point a gunshot was fired.
 {¶ 6} Detective Bush was next to Detective Alexander when Detective Alexander yelled that he had been shot. Detective Alexander, believing that they were under fire, shot his weapon into the house as he fell backwards over a vehicle. Detective Bush also fired at least once at the house.[3]
 {¶ 7} After the gunfire ceased, appellant and a woman exited the door of 3513 and crawled out on the porch as ordered by the officers. Sergeant Shoulders then ordered the officers to enter both 3511 and 3513 to conduct a protective sweep, looking for a suspected shooter.
 {¶ 8} As police entered the residences, appellant's children were removed from 3513. Shawn Cameron and his family were removed from 3511, as were Brittany Morris and her daughter, who were staying in an unfinished third-floor apartment. One firearm owned by Shawn Cameron was recovered from the upstairs residence, but it was determined that the gun was not involved in the shooting. No *Page 6 
shooting suspects were located in the house. Further, Edward Cameron, the target of the arrest warrant, was not found in the house.
 {¶ 9} During the protective sweep, the officers discovered that the rear basement door to the house was left wide open. This door served as a separate exit for both units of the double. While performing the protective sweep of the basement, officers observed an electronic scale with cocaine residue on a table, as well as a plastic bag containing crack cocaine located in a ceiling tile that was askew right above the table.
 {¶ 10} The officers secured the house, and because of the contraband that was located, they applied for a search warrant. A search warrant was then issued for 3513 West 125th Street.[4] The search warrant indicated that shots were fired as officers first approached the scene, but it did not disclose the origin of the shots. A shooting team associated with the homicide unit investigated the shooting. The team concluded that Detective Bush accidentally discharged his gun while removing it from his holster as he and Detective Alexander approached the front of the house. The team found physical evidence of a bullet striking the driveway and dislodging a piece of concrete where Detective Bush was standing. They also determined that no shots were fired from the house. *Page 7 
 {¶ 11} Detective Bush claimed that he did not know that he had discharged his weapon. Sergeant Shoulders testified that he saw a muzzle flash of a gun discharging near Detective Bush, but he did not know the origin of the shot. Although it is unclear specifically when the Cleveland Police Department concluded that Detective Bush accidentally discharged his firearm, the investigative team arrived after the protective sweep was completed.
 {¶ 12} During the subsequent search, based on the search warrant, more drug paraphernalia, money, personal papers, two bags of marijuana and nine bags of crack cocaine were located in the appellant's residence at 3513 West 125th Street. Appellant was charged with drug trafficking in violation of R.C. 2925.03 and possession of drugs in violation of R.C. 2925.11, both fourth degree felonies.
 {¶ 13} The trial court denied appellant's motion to suppress the search of his residence. He pled no contest and was found guilty of the charges. Appellant now appeals, advancing one assignment of error for our review, which states the following:
 {¶ 14} "The trial court committed error when it denied defendant-appellant's motion to suppress the evidence in this case."
 {¶ 15} Appellate review of a suppression ruling involves mixed questions of law and fact. See State v. Burnside, 100 Ohio St.3d 152,2003-Ohio-5372. When ruling on a motion to suppress, the trial court serves as the trier of fact and is the primary judge of the credibility of the witnesses and the weight of the evidence. See State v. *Page 8 Fanning (1982), 1 Ohio St.3d 19, 20. An appellate court must accept the trial court's findings of fact as true if they are supported by competent and credible evidence. Burnside, supra, at ¶ 8. But the appellate court must then determine, without any deference to the trial court, whether the facts satisfy the applicable legal standard. Id.
 {¶ 16} Appellant argues that the officers did not have the right to enter and search his residence because the officers created the exigent circumstances that were the basis for the protective sweep.
 {¶ 17} The Fourth Amendment states that "the right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated." The Supreme Court has consistently held that only "reasonable" searches are allowed by the Fourth Amendment, and that searches without a warrant are "per se unreasonable" except in a few well-defined and carefully circumscribed instances. Katz v. United States (1967), 389 U.S. 347, 357,88 S.Ct. 507, 19 L.Ed.2d 576.
 {¶ 18} One recognized exception to the warrant requirement centers around exigent circumstances in which the safety of the police or others within a home is in peril. See Minnesota v. Olson (1990), 495 U.S. 91,110 S.Ct. 1684, 109 L.Ed.2d 85; United States v. Johnson (6th Cir. 1994), 22 F.3d 674, 680. "The scope of the exigent circumstances exception must be strictly circumscribed by the exigencies that justify the entry, and the police bear a heavy burden when attempting to *Page 9 
demonstrate an urgent need that might justify warrantless searches or arrests." State v. Sheppard (2001), 144 Ohio App.3d 135, 140-141, quoting Welsh v. Wisconsin (1984), 466 U.S. 740, 749-750. Police officers cannot deliberately create exigent circumstances to justify a warrantless entry into a private dwelling. State v. Jenkins (1995),104 Ohio App.3d 265, 270; United States v. Socey (C.A.D.C1988),846 F.2d 1439, 1448, certiorari denied, 488 U.S. 858, 109 S. Ct. 152. Nevertheless, an objective standard is applied to determine whether the totality of the facts and circumstances known to an officer gives rise to a reasonable belief that immediate entry is necessary. State v.Williams, Cuyahoga App. No. 88873, 2007-Ohio-4845; see State v.Simmons, Highland App. No. 05CA4, 2006-Ohio-953, State v. Letsche, Ross App. 02CA2693, 2003-Ohio-6942.
 {¶ 19} In this case, the testimony revealed that the Cleveland police were executing an arrest warrant for Edward Cameron, who was believed to be hiding at 3511 West 125th Street. Edward Cameron was considered armed and dangerous. As Detectives Bush and Alexander approached the double house, a man exited the adjacent door at 3513 West 125th Street. They yelled "police" and pulled out their weapons. Detective Bush accidently discharged his weapon. Detective Alexander felt something hit his bulletproof vest, and he yelled that he had been shot. Detectives Alexander and Bush then fired into the house.
 {¶ 20} After the gunfire ceased, appellant and a woman appeared at the door of 3513 and crawled out onto the porch. After the two were secured, Sergeant *Page 10 
Shoulders ordered the officers to enter both 3511 and 3513 to conduct a protective sweep to search for a suspected shooter.
 {¶ 21} The record reveals a chaotic scenario where police were not in position at the time the gunfire erupted. It was 6:00 a.m., and the officers were seeking to arrest a violent suspect.
 {¶ 22} The police used the shooting as the basis for conducting a protective sweep that led to the observation of contraband in the basement. In reviewing the actions of the police, we must first consider the question, what the police knew and when did they know it?
 {¶ 23} Detective Bush testified that he did not know or believe that he had accidentally discharged his firearm when he was removing it from his holster. Under cross-examination, Detective Bush continued to claim that he believed he was shot at by someone inside the double.[5]
Nevertheless, the subsequent investigation revealed that no shots came from the house. Detective Alexander testified that he was unaware that Bush had accidentally discharged his weapon and he believed he *Page 11 
was under fire from inside the house, and that was why he fired his weapon at the house. Sergeant Shoulders testified that he did not know the origin of the shots, and he ordered the protective sweep.
 {¶ 24} First, there is no evidence in the record to suggest that what occurred here was anything but an accident. The police did not arrive on the scene and intentionally shoot at the house in an effort to gain entry. If the evidence suggested such a motive, our task would be simple. Obviously, the police cannot deliberately create the exigent circumstances in an effort to justify entering a residence without a warrant. Jenkins, supra.
 {¶ 25} Second, even if officers had been informed by Detective Bush that he accidentally fired the initial shot, the police would be justified in conducting a protective sweep to search for injured individuals.[6] See Minnesota, supra.
 {¶ 26} Further, we cannot ignore the fact that police had an arrest warrant for Edward Cameron at 3511 West 125th Street. Ohio law dictates that an arrest warrant gives police the authority to enter and search for the suspect at the residence listed in the warrant. R.C. 2935.12. This includes the basement at that address, which is where the electronic scale and crack cocaine were observed in plain view.
 {¶ 27} Nevertheless, the totality of the facts and circumstances known to the officers at that time gave rise to a reasonable belief that immediate entry into both *Page 12 
residences in the double was necessary. Whether that basis was the belief that they had been fired upon, or because they had a duty to determine if anyone inside the house was injured, the police had the authority to conduct a protective sweep. Further, the police had an arrest warrant that authorized them to search for Edward Cameron at 3511 West 125th Street, which included the basement that is shared with and owned by the appellant.
 {¶ 28} Appellant also asserts that the officers exceeded the scope of a protective search when they entered the house. Specifically, he argues that the officers had no specific and articulable facts that would warrant a reasonably prudent officer to believe that any area in appellant's residence harbored a dangerous individual.
 {¶ 29} A protective sweep is not a full search of the premises, but only a cursory inspection of those areas where a person who poses a threat of danger to police may be found. State v. Martin, Cuyahoga App. No. 82026, 2003-Ohio-4058. Before an area may be searched, "there must be articulable facts which, taken together with the rational inferences from those facts, would warrant a reasonably prudent officer in believing that the area to be swept harbors an individual posing a danger to those on the arrest scene." Maryland v. Buie (1990),494 U.S. 325, 334. Although the protective sweep of the internal portion of appellant's residence at 3513 did not uncover anyone present who posed a threat of danger or anyone who was injured, because the police fired an undetermined number of shots into the *Page 13 
house, we find that a protective sweep of the entire house, including the basement, was justified.
 {¶ 30} Appellant also argues that the officers exceeded the scope of permissible search and seizure allowed under the "plain view" doctrine. Specifically, he asserts that the officers unlawfully went through dresser drawers and cabinets prior to obtaining a search warrant. The police denied that they exceeded the scope of the initial search. Witnesses for the defense testified that many of the drawers were open and overturned after the protective sweep but prior to the police obtaining the actual search warrant for appellant's residence. We need not address this allegation because the basis of the warrant, the electronic scale and the crack cocaine, was found in the basement in plain view.
 {¶ 31} Police officers may seize contraband they find in plain view. "[T]o justify the warrantless seizure of an item under the plain view doctrine: (1) the seizing officer must be lawfully present at the place from which he can plainly view the evidence; (2) the officer has a lawful right of access to the object itself; and (3) it is immediately apparent that the item seized is incriminating on its face." Horton v.California (1990), 496 U.S. 128, 136-37; State v. Waddy (1992),63 Ohio St.3d 424, 442; State v. Davis, Cuyahoga App. No. 87964, 2007-Ohio-408.
 {¶ 32} All of these requirements were satisfied in the instant case. As previously determined, the officers were lawfully inside the residence conducting a protective search when they saw the electronic scale with cocaine residue on a table *Page 14 
in the basement, as well as the plastic bag containing 27.77 grams of crack cocaine above the table in a ceiling tile that was askew. These items were not located in dresser drawers or cabinets as implied by appellant. Further it was immediately apparent that these items were contraband. Therefore, the officers could have retrieved the contraband without a warrant. Nevertheless, they obtained a search warrant for 3513 West 125th Street presumably because appellant owned the double and drugs were found in the basement.[7]
 {¶ 33} Finally, appellant argues that the search warrant, which resulted in the appellant being charged in the case, was not valid because it was based on an unlawful warrantless search of his residence. As previously indicated, the entry was lawful, the protective sweep was lawful, and the plain view doctrine applied. As a result, appellant's sole assignment of error is overruled.
Judgment affirmed.
It is ordered that appellee recover from appellant costs herein taxed.
The court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution. The defendant's conviction having been affirmed, any bail pending appeal is terminated. Case remanded to the trial court for execution of sentence. *Page 15 
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
SEAN C. GALLAGHER, JUDGE
COLLEEN CONWAY COONEY, P.J., and MARY J. BOYLE, J., CONCUR
[1] The defense raised several issues over the reliance of the police on this address. The defense asserted that Edward Cameron never lived there. Nevertheless, Shawn Cameron admitted that his sister, Tonya Cameron, Edward Cameron's mother, used the 3511 West 125th Street as an address for Edward Cameron following his release from the custody of the O.D.Y.S. The police asserted that Edward Cameron had obtained an Ohio State ID card with that address. Police also asserted they learned from C.M.H.A. that Tonya and Edward Cameron used the address after being evicted from C.M.H.A. property. Further, police apparently were able to identify two Ohio driver's licenses in Tonya Cameron's name to that address.
In addition, police claimed they located traffic tickets issued to Edward Cameron for vehicles listed to Anthony Cameron at the 3513 West 125th Street address, but they failed to include this address on the arrest warrant.
[2] Anthony Cameron reportedly lived with his wife, three children and his sister-in-law, Delores Glover, at the 3513 West 125th
Street downstairs location. His younger brother, Shawn Cameron, lived upstairs at the 3511 West 125th Street location with his 17-year-old son, Devon Cameron. A third-floor unit that did not have a separate address was occupied by a Brittany Morris, who lived there with her daughter. Lastly, Harold Cameron, a brother of Anthony and Shawn Cameron, was believed to be occupying, on occasion, the basement of these residences.
[3] The record is unclear as to how many shots were actually fired. Detective Bush's gun was examined, and it was determined he fired two shots. Detective Alexander's gun was also examined by the police department's shooting team, but the results of its findings are not in the record. Detective Alexander testified he fired "three or four" shots into the residences. Defense counsel asserted that up to 24 shots were fired into the residences, but this was never confirmed by any testimony. A photograph marked as defense exhibit "C" showed six separate locations where bullets apparently entered the residences, but at least one officer, Detective Follmer, claimed that only Detectives Bush and Alexander fired their weapons. Another photograph, marked defense exhibit "D," showed three apparent bullet holes inside the house marked as "17," "16," and "19," respectively.
[4] This second warrant, a search warrant, as compared to the arrest warrant issued earlier, listed only the address of 3513 West 125th Street. It did not include the 3511 West 125th Street address.
[5] The following cross-examination of Detective Bush took place at one point during the proceedings:
Mr. Walton: "And you are claiming here today that you don't know that your gun was accidentally — you accidentally discharged your gun, although it was determined by a shooting team that's exactly what happened?"
 Detective Bush: "That was their conclusion of their investigation."
 Mr. Walton: "And are you claiming that that didn't happen?"
 Detective Bush: "I don't know."
 Mr. Walton: "You don't know?"
 Detective Bush: "No."
[6] Again, the record is unclear, but suggests anywhere from 5 to 24 shots were fired into the residences.
[7] No challenge was raised regarding the nexus between 3513 and the basement. We note that the appellant was not charged with the contraband found in the basement. *Page 1