[Cite as *State v. Hemphill*, 2011-Ohio-5395.]

# Court of Appeals of Ohio

EIGHTH APPELLATE DISTRICT
COUNTY OF CUYAHOGA

JOURNAL ENTRY AND OPINION
**No. 96409**

## STATE OF OHIO

PLAINTIFF-APPELLEE

vs.

## LAWRENCE HEMPHILL

DEFENDANT-APPELLANT

**JUDGMENT:**
**AFFIRMED**

Criminal Appeal from the
Cuyahoga County Court of Common Pleas
Case No. CR-542662

**BEFORE:** Kilbane, A.J., Blackmon, J., and Celebrezze, J.

**RELEASED AND JOURNALIZED:** October 20, 2011

**ATTORNEY FOR APPELLANT**

Britta M. Barthol
P.O. Box 218
Northfield, Ohio 44067

**ATTORNEYS FOR APPELLEE**

William D. Mason
Cuyahoga County Prosecutor
John Wojton
Assistant County Prosecutor
The Justice Center - 8th Floor
1200 Ontario Street
Cleveland, Ohio 44113

MARY EILEEN KILBANE, A.J.:

{¶ 1} Defendant-appellant, Lawrence Hemphill, appeals from his convictions for drug trafficking and possession of criminal tools. For the reasons set forth below, we affirm.

{¶ 2} On October 7, 2010, defendant and codefendant, Anderson Baird, were indicted pursuant to a four-count indictment. Counts 1-3 pertained to both defendant and Baird and charged them with trafficking in less than 200 grams of marijuana in violation of R.C. 2925.03(A)(1) and 2925.03(A)(2), and possession of criminal tools in violation of R.C. 2923.24, with a furthermore clause that the tools (an electronic scale and $128) were intended to be used for drug trafficking. These charges also contained

specifications for the forfeiture of an electronic scale and $128. Count 4 pertained solely to Baird and charged him with tampering with evidence. Defendant and Baird both pled not guilty and the matter proceeded to a joint trial on January 5, 2011. Defendant waived his right to a jury trial as to the forfeiture specifications and the remaining charges were tried to a jury.

{¶ 3} The State's evidence demonstrated that on September 29, 2010, Cleveland Police Vice Unit Detective Benjamin McCully ("Detective McCully") arranged for a buy/bust, or a police monitored drug sale, using a confidential informant ("CI") at a beverage store located at the intersection of St. Clair Avenue, London Road, and Wayside Road. Prior to the sale, the CI, a woman who had worked with the police for six years and had been involved with approximately 75 other drug investigations, was searched for contraband at the Fifth District Police Station and was given buy money, a $20 bill that had been photocopied. At about 9:30 p.m., Detective McCully drove her to the beverage store in an unmarked vehicle and arranged for surveillance by other officers. At this point, Detective Charles Davis ("Detective Davis") observed the defendants walking in the parking lot of the London Liquor Store and talking to people but not going inside. He also observed Baird walk over to a Camaro, get inside, then quickly get back out less than one minute later. According to Detective Davis, this behavior was consistent with participation in drug sales.

{¶ 4} Detective McCully parked in the lot approximately 30 feet from the entrance and observed two males, identified as defendant and Baird, standing near the

entrance. The CI approached the men, and defendant motioned for her to go around the corner with him. Detective McCully then repositioned his car in order to maintain continuous surveillance. At that point, Baird got into the passenger seat of a Camaro parked nearby, and defendant then made a hand-to-hand transaction with the CI.

{¶ 5} The CI signaled Detective McCully that the sale had been made. He drove out to the street and the CI then returned to his vehicle. She gave him two bags of marijuana, which Detective McCully then sealed and marked. According to Detective McCully, marijuana is typically packaged into $5 or $10 bags, and the quantity of marijuana was consistent with a $20 purchase.

{¶ 6} Defendant proceeded to his vehicle, a black Cadillac Seville, which was parked nearby. The Camaro pulled up to the Cadillac and Baird then got into the passenger seat of the Cadillac. The Cadillac proceeded eastward on Wayside Road, and Detective McCully signaled the takedown unit to stop the car and arrest the men.

{¶ 7} Detective McCully acknowledged that the CI is paid for each successful buy/bust, and that the CI has a criminal record. He also admitted that it was dark when the buy/bust occurred but stated that the area was well lit and that he could clearly see defendant make a hand-to-hand transaction with the CI.

{¶ 8} Detective Davis and his partner, Detective Gerald Crayton ("Detective Crayton"), conducted surveillance in an unmarked car during the buy/bust. According to Detective Crayton, the CI milled about, then engaged the defendants in conversation. After a black Cadillac left the parking lot and proceeded on Wayside Road, he and

Detective Davis were instructed to stop that vehicle. Detective Crayton's unit followed the Cadillac and activated its siren and lights. He observed the front passenger of the Cadillac throw something toward the sidewalk of a nearby home. Other units arrived and boxed in the Cadillac.

{¶ 9} Detective Crayton next observed Baird attempting to conceal something in his waistband. Detective Sean Smith ("Detective Smith"), who was in another unit assisting with the arrest, searched Baird and found a fist-sized bag of marijuana in the waistband of his pants. Baird also had $128. The officers located a digital scale, designed to resemble a cell phone, in the glove box of the car. According to Detective Smith, such scales are frequently used by drug dealers to measure quantities of drugs for sale. No drugs were found on the defendant, and a woman, who had been a rear-seat passenger in the Cadillac, was searched and then permitted to leave.

{¶ 10} Detective Smith located a bag containing six smaller bags of marijuana on the tree lawn near the car, and Cleveland Police Officer Bryan Moore found the $20 bill near the rear of the Cadillac. According to Detective Davis, this was the same $20 bill that had been photocopied earlier at the police station.

{¶ 11} Sergeant James Purcell ("Sergeant Purcell") was in another unit that stopped the driver of the Camaro, Charles Lawrence ("Lawrence"), about one block south of the beverage store, at the intersection of Burnside Road and London Road. According to Sergeant Purcell, Lawrence had a small quantity of marijuana concealed in a napkin, and he was cited for misdemeanor drug possession.

{¶ 12} Nicole Pride-Allen, of the Cuyahoga County Regional Forensic laboratory, testified that she analyzed the evidence obtained in this matter. The bag recovered from Baird contained 16.80 grams of marijuana. The bag containing the six smaller bags all contained marijuana with a total weight of 15.82 grams. The two bags obtained from the CI contained .97 grams of marijuana, and the bag recovered from Lawrence contained 2.42 grams of marijuana.

{¶ 13} Defendants presented testimony from Baird and his mother, Francine Gill ("Gill").

{¶ 14} Baird testified that he and defendant, his half-brother, went to the London Liquor Store between 8:00 and 9:00 p.m. The store was extremely crowded and the checkout line was very long. As he waited in line, a friend who was nearby called and asked Baird to get him a drink. Baird agreed to do so, then brought the drink out to his friend's Camaro. At that point, defendant drove over to the Camaro, and the group was arrested by the Cleveland Police. Baird acknowledged that he has eight prior felony convictions and admitted that he possessed a small amount of marijuana for his own personal use, but he denied that the group was engaged in drug trafficking, and he denied that other contraband recovered from the scene belonged to them. He denied throwing drugs and money out of the window of the Cadillac, and maintained that these items and the digital scale were found by the police after nearly two hours of searching. Finally, he asserted that the $128 that he had at the time of his arrest was earned through work as a handyman, and it was intended for the purchase of new car speakers.

{¶ 15} Gill testified that Baird called her and she and defendant's father quickly arrived on the scene. They asked to drive the Cadillac home, but they had to wait for almost an hour while the police searched it and the area.

{¶ 16} The matter was submitted to the jury. The defendants were convicted of all charges and specifications.

{¶ 17} The court merged the trafficking convictions and the State elected to have the defendant sentenced on Count 1. The court then sentenced him to two concurrent terms of six months of imprisonment and up to three years of postrelease control. Defendant's driver's license was also suspended for six months. He now appeals and assigns two errors for our review.

{¶ 18} Defendant's first assignment of error states:

**"The evidence was insufficient as a matter of law to support a finding beyond a reasonable doubt that appellant was guilty of drug trafficking and possession of criminal tools."**

{¶ 19} Within this assignment of error, defendant asserts that the State's evidence is insufficient since none of the witnesses observed him making a drug sale, he had no evidence associated with drug sales on his person, and the marijuana found in this matter was recovered from the codefendant.

{¶ 20} A challenge to the sufficiency of the evidence supporting a conviction requires a court to determine whether the State has met its burden of production at trial. *State v. Thompkins*, 78 Ohio St.3d 380, 390, 1997-Ohio-52, 678 N.E.2d 541. On review for sufficiency, courts are to assess not whether the State's evidence is to be believed, but

whether, if believed, the evidence against a defendant would support a conviction. Id. The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. *State v. Jenks* (1991), 61 Ohio St.3d 259, 574 N.E.2d 492, paragraph two of the syllabus.

{¶ 21} The elements of drug trafficking are set forth in 2925.03 as follows:

**"(A) No person shall knowingly do any of the following:**

**"(1) Sell or offer to sell a controlled substance;**

**"(2) Prepare for shipment, ship, transport, deliver, prepare for distribution, or distribute a controlled substance, when the offender knows or has reasonable cause to believe that the controlled substance is intended for sale or resale by the offender or another person."**

{¶ 22} The elements of possession of criminal tools are set forth in R.C. 2923.24(A) are as follows:

**"No person shall possess or have under the person's control any substance, device, instrument, or article, with purpose to use it criminally."**

{¶ 23} R.C. 2925.01(K) defines possession as, "* * * having control over a thing or substance, but may not be inferred solely from mere access to the thing or substance through ownership or occupation of the premises upon which the thing or substance is found."

{¶ 24} Possession may be actual or constructive. *State v. Chandler*, Cuyahoga

App. Nos. 93664 and 93665, 2011-Ohio-590. Actual possession entails ownership or physical control, whereas constructive possession is defined as knowingly exercising dominion and control over an object, even though that object may not be within one's immediate physical possession. Id., citing *State v. Hankerson* (1982), 70 Ohio St.2d 87, 434 N.E.2d 1362.

{¶ 25} In this matter, the State presented evidence that police observed defendants walking in the parking lot of the London Liquor Store and talking to people but not going inside. Police also observed Baird briefly get into a nearby Camaro. Detective McCully then observed the CI engage in a hand-to-hand transaction with defendant during a buy/bust that occurred around the corner from the store. Thereafter, the CI signaled Detective McCully that the sale had been made, and when she returned to his vehicle, she now had two bags of marijuana, weighing .97 grams, a quantity that was consistent with a $20 purchase. Further, defendant's vehicle was being stopped by police, objects were thrown from his car, and an additional quantity of prepackaged marijuana as well as the original buy money were recovered nearby, and a scale, designed to look like a cell phone was recovered from defendant's car.

{¶ 26} All of this evidence is sufficient, when viewed in a light most favorable to the prosecution, for a rational trier of fact to conclude that defendant committed the offenses of drug trafficking under R.C. 2925.03(A)(1) and (A)(2), by selling a controlled substance, and by preparing for shipment, shipping, transporting, delivering, preparing for distribution, or distributing a controlled substance, while knowing or having reason to

know it was for sale.     There is sufficient evidence to support these offenses.

{¶ 27} All of this evidence is likewise sufficient, when viewed in a light most favorable to the prosecution, for a rational trier of fact to conclude that defendant committed the offenses of possession of criminal tools, by having the electronic scale, an item frequently used to facilitate drug sales, in the glove compartment of his vehicle. There is sufficient evidence to support this offense.

{¶ 28} The first assignment of error is without merit.

{¶ 29} Defendant's second assignment of error states:

**"Appellant's convictions for drug trafficking and possession of criminal tools was against the manifest weight of the evidence."**

{¶ 30} Defendant next asserts that his conviction is against the manifest weight of the evidence since no one observed defendant making a drug sale, the State presented conflicting testimony as to the traffic in the area and the location of the Cadillac, the photocopy of the buy money was not presented at trial, and the CI was paid only for successful drug purchases.

{¶ 31} In determining whether a conviction is against the manifest weight of the evidence,  the appellate court sits as a "thirteenth juror" and disagrees with the factfinder's resolution of the conflicting testimony.  *Thompkins* at 387, citing *Tibbs v. Florida* (1982), 457 U.S. 31, 42, 102 S.Ct. 2211, 72 L.Ed.2d 652.   The reviewing court must examine the entire record, weigh the evidence and all reasonable inferences, consider the credibility of the witnesses, and determine whether the jury "clearly lost its way and created such a manifest miscarriage of justice that the conviction must be

reversed and a new trial ordered." Id., quoting *State v. Martin* (1983), 20 Ohio App.3d 172, 175, 485 N.E.2d 717.

{¶ 32} The appellate court may not merely substitute its view for that of the jury, and reversal on manifest weight grounds is reserved for "the exceptional case in which the evidence weighs heavily against the conviction." Id., quoting *Martin*.

{¶ 33} In this matter, after examining the entire record, weighing the evidence and all reasonable inferences, we are unable to conclude that the jury clearly lost its way and created such a manifest miscarriage of justice in convicting defendant of the offenses of drug trafficking and possession of criminal tools. Based upon the eyewitness observations of Detective McCully, there was evidence that defendant engaged in a hand-to-hand transaction with the CI, who then signaled the detective that a sale had been made and returned to the car with two bags of marijuana. Prior to defendant's arrest, Detective Crayton observed objects being thrown from defendant's car, additional prepackaged marijuana as well as the buy money were recovered nearby, and a digital scale designed to look like a cell phone was recovered from defendant's car. Although Baird denied that they were engaging in drug activity, and there was evidence to indicate that the CI is only paid for successful drug sales, it was dark outside, and the collection of evidence took a considerable time, after examining the entire record and weighing the evidence and all reasonable inferences, we cannot say that the jury clearly lost its way and created a manifest miscarriage of justice in convicting defendant of the offenses. The state's evidence was consistent and cohesive and clearly established that the CI obtained

two bags of marijuana as a result of the buy/bust, and further, the defendant was also in possession of other drugs and the scale. The defense, on the other hand, did not refute the evidence linking defendant to the drugs and contraband recovered herein.

{¶ 34} The second assignment of error is without merit.

Judgment affirmed.

It is ordered that appellee recover from appellant costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution. The defendant's conviction having been affirmed, any bail pending appeal is terminated.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____

MARY EILEEN KILBANE, ADMINISTRATIVE JUDGE

PATRICIA A. BLACKMON, J., and
FRANK D. CELEBREZZE, JR., J., CONCUR