[Cite as *State v. Grondin*, 2022-Ohio-3366.]

| | | |
|---|---|---|
| STATE OF OHIO | ) | IN THE COURT OF APPEALS |
| | )ss: | NINTH JUDICIAL DISTRICT |
| COUNTY OF LORAIN | ) | |

STATE OF OHIO

    Appellee

v.

DINO GRONDIN

    Appellant

C.A. No.    21CA011763

APPEAL FROM JUDGMENT
ENTERED IN THE
COURT OF COMMON PLEAS
COUNTY OF LORAIN, OHIO
CASE No.    20CR102385

DECISION AND JOURNAL ENTRY

Dated: September 26, 2022

HENSAL, Presiding Judge.

{¶1} Dino Grondin appeals the denial of his motion to suppress and his drug-related convictions in the Lorain County Court of Common Pleas. For the following reasons, this Court affirms.

I.

{¶2} Sergeant Dennis Camarillo testified that he was investigating complaints of drug activity and child abuse occurring at Mr. Grondin's house when the Lorain Police Department received a request from Mr. Grondin's wife to have police present while she removed her things from the house. Sergeant Camarillo, therefore, accepted the duty along with other officers. When they arrived, they told Mr. Grondin that they were there at his wife's request. Once Mr. Grondin let them inside, however, Sergeant Camarillo told him about the other complaints and asked if he could investigate those too. Mr. Grondin told the officers they could look through the house if they did not touch anything.

**{¶3}** As the officers were escorting Mr. Grondin's wife throughout the house, they went down to the basement where they saw drug paraphernalia in plain view, digital scales, and two metal safes that they recognized as gun safes. Knowing that Mr. Grondin was not allowed to possess firearms, Sergeant Camarillo asked Mr. Grondin's wife to open the safes, but she refused. He then asked Mr. Grondin to open them, advising him that they likely had enough information to obtain a warrant if he declined. Mr. Grondin complied with the request and entered the key code for one of the safes. Inside it, officers found several different drugs, which they seized and sent away for testing.

**{¶4}** When testing revealed that several of the drugs in the safe were illegal, Sergeant Camarillo obtained a warrant for Mr. Grondin's and his wife's arrest. When the sergeant and other officers arrived at the house to execute the warrant, a person who said she was Mr. Grondin's cousin answered the door and let them in. Mr. Grondin was in the basement, but he eventually came upstairs and was arrested. When Sergeant Camarillo asked Mr. Grondin where his wife was, Mr. Grondin told him to look for himself, so Sergeant Camarillo went down to the basement. On a table he saw a digital scale, a bag and jars of marijuana, and pills that were later identified as Alprazolam. After obtaining the passcode to the safe from Mr. Grondin, Sergeant Camarillo opened it and found more pills that were later identified as amphetamine.

**{¶5}** The Grand Jury indicted Mr. Grondin for eight counts of drug trafficking or drug possession arising from the first search of the house. It indicted him for two counts of drug possession arising from the second search of the house. It also indicted him for one count of possession of criminal tools arising from either search. Mr. Grondin moved to suppress the evidence discovered during the first search, arguing that he was not provided *Miranda* warnings. Following a hearing, the trial court overruled his motion. A jury acquitted Mr. Grondin of all the

drug trafficking and possession charges from the first search after Mr. Grondin's wife testified that the drugs in the safe belonged to her. It found him guilty of the drug charges arising out of the second search as well as the possession of criminal tools charge. The trial court sentenced Mr. Grondin to one year of community control. Mr. Grondin has appealed, assigning three errors.

## II.

### ASSIGNMENT OF ERROR I

THE TRIAL COURT ERRED IN DENYING DEFENDANT'S MOTION TO SUPPRESS EVIDENCE.

{¶6} In his first assignment of error, Mr. Grondin argues that the trial court incorrectly denied his motion to suppress. A motion to suppress evidence presents a mixed question of law and fact. *State v. Burnside*, 100 Ohio St.3d 152, 2003-Ohio-5372, ¶ 8. "When considering a motion to suppress, the trial court assumes the role of trier of fact and is therefore in the best position to resolve factual questions and evaluate the credibility of witnesses." *Id*., citing *State v. Mills*, 62 Ohio St.3d 357, 366 (1992). Thus, a reviewing court "must accept the trial court's findings of fact if they are supported by competent, credible evidence." *Id*., citing *State v. Fanning*, 1 Ohio St.3d 19, 20 (1982). "Accepting these facts as true, the appellate court must then independently determine, without deference to the conclusion of the trial court, whether the facts satisfy the applicable legal standard." *Id*., citing *State v. McNamara*, 124 Ohio App.3d 706, 710 (4th Dist.1997). Accordingly, this Court grants deference to the trial court's findings of fact but conducts a de novo review of whether the trial court applied the appropriate legal standard to those facts. *State v. Booth*, 151 Ohio App.3d 635, 2003-Ohio-829, ¶ 12 (9th Dist.).

{¶7} Mr. Grondin's first argument challenges the trial court's determination that he could not contest the search of the safe during the officers' first search of the home because he did not have a reasonable expectation of privacy in the safe. "The Fourth Amendment protects people

against unreasonable searches and seizures." *State v. LaRosa*, 165 Ohio St.3d 346, 2021-Ohio-4060, ¶ 16. "In accordance with those protections, the state has the burden to establish by a preponderance of the evidence that a defendant's property was not illegally seized or that no illegal search occurred in violation of the defendant's constitutional rights." *Id*. "[O]nce a defendant has alleged that his rights were violated by the challenged search or seizure," however, "the state is entitled to defend against that claim by asserting that the defendant lacked a protected Fourth Amendment interest in the place searched or item seized." *State v. Wintermeyer*, 158 Ohio St.3d 513, 2019-Ohio-5156, ¶ 12. "In this situation, '[t]he proponent of [the] motion to suppress has the burden of establishing that his own Fourth Amendment rights were violated by the challenged search or seizure.'" (Alterations in original) *Id*., quoting *Rakas v. Illinois*, 439 U.S. 128, 130 fn.1 (1978).

{¶8} The trial court noted that, during the hearing on the motion to suppress, Mr. Grondin's wife testified that the safe that Mr. Grondin opened for the officers belonged to her, that she bought it before she married Mr. Grondin, and that Mr. Grondin did not have permission to use the safe. Following her testimony, the State argued that Mr. Grondin did not have a reasonable expectation of privacy in the safe. Although the trial court requested additional briefing on the issue, it determined that Mr. Grondin's supplemental brief failed to address whether he had a reasonable expectation of privacy in his wife's safe. Because Mr. Grondin had failed to claim, argue, or allege any reasonable expectation of privacy in the contents of the safe, the court concluded that he could not complain about the seizure of its contents.

{¶9} In his appellate brief, Mr. Grondin argues that he had a reasonable expectation of privacy in the safe because it was in his home. Because he did not make this argument to the trial court, however, he has forfeited it except for a claim of plain error. *See State v. Krowiak*, 9th Dist.

Medina No. 21CA0003-M, 2022-Ohio-413, ¶ 37.  Mr. Grondin has not argued plain error on appeal and we decline to sua sponte fashion an argument for him.  *Id.*  We also note that Mr. Grondin has not challenged the trial court's determination that he failed to claim, argue, or allege a reasonable expectation of privacy in the safe.  Accordingly, he has failed to establish that the trial court erred when it determined that he could not challenge the search of the safe.

{¶10}  Mr. Grondin next argues that he established that the first search of the home went beyond his consent.  He also argues that he should have been given *Miranda* warnings because, considering all the circumstances, he was in custody during the search.  He further argues that the length of the search far exceeded the scope of his consent.  Upon review of the record, however, we conclude that Mr. Grondin has failed to demonstrate any harm.  *See* Crim.R. 52(A).  As previously noted, the jury acquitted Mr. Grondin of all the charges arising from the first search of the house except for the possession of criminal tools count that related to the digital scales that were found in the basement during both searches.  The scales, however, were in plain view when the officers first entered the basement, which was within Mr. Grondin's directive that they could look through the house if they did not touch anything.

{¶11}  According to Mr. Grondin, the drugs found during the second search of his home should be considered the fruit of the poisonous tree of the first search.  He notes that the only reason the officers returned to the house was to execute an arrest warrant after the drugs found in the safe during the first search tested positive for being illegal substances.  But Mr. Grondin did not establish that he had a reasonable expectation of privacy in the safe.  Upon review of the record, we conclude that Mr. Grondin has not established that the offenses of which he was convicted are connected to his allegation that the officers exceeded the scope of his consent or their failure to administer *Miranda* warnings.  Mr. Grondin's first assignment of error is overruled.

ASSIGNMENT OF ERROR II

DEFENSE COUNSEL PROVIDED CONSTITUTIONALLY INEFFECTIVE ASSISTANCE BY FAILING TO ARGUE FOR SUPPRESSION AS ARGUED HEREIN, AS WELL AS ARGUE SEPARATELY TO SUPPRESS THE FRUITS OF THE SECOND SEARCH OF GRONDIN'S HOME.

{¶12}  In his second assignment of error, Mr. Grondin argues that his trial counsel was ineffective because his motion to suppress did not include all the arguments that he made in support of his first assignment of error.  Mr. Grondin also argues that his counsel should have moved to suppress the evidence found when officers returned to his home to arrest him.  To prevail on a claim of ineffective assistance of counsel, Mr. Grondin must establish that:  (1) his counsel's performance was deficient to the extent that "counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment" and (2) "the deficient performance prejudiced the defense." *Strickland v. Washington*, 466 U.S. 668, 687 (1984).  A deficient performance is one that falls below an objective standard of reasonable representation. *State v. Bradley*, 42 Ohio St.3d 136 (1989), paragraph two of the syllabus.  A court, however, "must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.'" *Strickland* at 689, quoting *Michel v. Louisiana*, 350 U.S. 91, 101 (1955).  To establish prejudice, Mr. Grondin must show that there existed a reasonable probability that, but for his counsel's errors, the outcome of the proceeding would have been different. *State v. Sowell*, 148 Ohio St.3d 554, 2016-Ohio-8025, ¶ 138.

{¶13}  Regarding the arguments he made in support of his first assignment of error, Mr. Grondin recognizes that he may have forfeited some of them and, to the extent that they were forfeited, he alleges that his trial counsel was ineffective.  To demonstrate that he was prejudiced

by the forfeiture, Mr. Grondin attempts to incorporate all his prior arguments as if fully rewritten. An appellant, however, "cannot 'incorporate the arguments contained in the other assignments of error to support a different assignment of error.'" *State v. Calhoun*, 9th Dist. Summit No. 29604, 2021-Ohio-1713, ¶ 24, quoting *State ex rel. Midview Local School Dist. Bd. of Edn. v. Ohio School Facilities Comm.*, 9th Dist. Lorain No. 16CA010991, 2017-Ohio-6928, ¶ 29. "By doing so, [he] improperly asks this Court to extrapolate and apply [his] argument in a prior assignment of error." *State v. Gales*, 9th Dist. Summit No. 29316, 2022-Ohio-776, ¶ 35, quoting *State ex rel. Midview Local School Dist. Bd. of Edn.* at ¶ 29.

{¶14} Regarding whether Mr. Grondin's trial counsel should have moved to suppress the evidence discovered during the second search of the home, "[f]ailing to file a motion to suppress does not constitute ineffective assistance of counsel per se." *State v. Double*, 9th Dist. Medina No. 20CA0021-M, 2021-Ohio-632, ¶ 28, quoting *State v. Brown*, 115 Ohio St.3d 55, 2007-Ohio-4837, ¶ 65. "Counsel's decision not to file a motion to suppress may be a matter of trial strategy, including counsel's reasonable assessment of whether such a motion is likely to succeed and recognition that filing a motion to suppress has risks." *Id.* at ¶ 28, quoting *State v. Kendall*, 9th Dist. Summit No. 25721, 2012-Ohio-1172, ¶ 7. "To establish ineffective assistance of counsel for failure to file a motion to suppress, a defendant must prove that there was a basis to suppress the evidence in question." *Id.* at ¶ 28, quoting *Brown* at ¶ 65. "Furthermore, in order to satisfy the prejudice prong of the *Strickland* test, a defendant must demonstrate that there was a reasonable probability that the motion to suppress would have been granted." *Id.* at ¶ 28, citing *Kendall* at ¶ 7.

{¶15} Mr. Grondin argues that the testimony at trial established that, after arresting him during their second trip to his house, the officers began questioning him before providing him with

*Miranda* warnings. This questioning led to their further search of the home and their discovery of the drugs that led to the charges of which he was convicted. According to Mr. Grondin, the officers would not have searched his home for his wife but for his answer, telling them to search for her themselves.

{¶16} According to Sergeant Camarillo, when they returned to Mr. Grondin's residence, they had arrest warrants for both Mr. Grondin and his wife. Testimony established that, at the time of the first search, Mr. Grondin had obtained a protection order against his wife, which is why she needed a police presence in order to retrieve her possession from the house. By the time of the second search, however, the protection order had expired. "[A]n arrest warrant gives police the authority to enter and search for the suspect at the residence listed in the warrant." *State v. Cameron*, 8th Dist. Cuyahoga No. 89165, 2007-Ohio-6066, ¶ 26; *see also State v. Martin*, 151 Ohio St.3d 470, 2017-Ohio-7556, ¶ 78. Based on the record before this Court, Mr. Grondin has not established that the officers would not have searched his entire house for his wife but for his statement. Accordingly, upon review of the record, we conclude that Mr. Grondin has failed to establish that he was prejudiced by his counsel's failure to move to suppress the evidence discovered during the officers' second search of the house. Mr. Grondin's second assignment of error is overruled.

ASSIGNMENT OF ERROR III

THE STATE OF OHIO PRESENTED INSUFFICIENT EVIDENCE TO
SUPPORT A CONVICTION FOR POSSESSION OF CRIMINAL TOOLS.

{¶17} In his third assignment of error, Mr. Grondin argues that there was insufficient evidence to convict him of possession of criminal tools, namely the digital scales that officers observed during their searches, at the level of a felony of the fifth degree. Whether a conviction is supported by sufficient evidence is a question of law, which we review de novo. *State v.*

*Thompkins*, 78 Ohio St.3d 380, 386 (1997). In carrying out this review, our "function * * * is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt." *State v. Jenks*, 61 Ohio St.3d 259 (1991), paragraph two of the syllabus. "The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." *Id.*

{¶18} The jury found Mr. Grondin guilty of violating Revised Code Section 2923.24(A). That section provides that "[n]o person shall possess or have under the person's control any substance, device, instrument, or article, with purpose to use it criminally." Subsection (C) provides that, "[i]f the circumstances indicate that the substance, device, instrument, or article involved in the offense was intended for use in the commission of a felony, possessing criminal tools is a felony of the fifth degree."

{¶19} According to Mr. Grondin, there was no evidence that the scales were intended for use in the commission of a felony. He argues that there was no evidence that drugs were ever placed on the scales or that they were in any way used in association with drug trafficking. He notes that he was only convicted of possession of the pills found during the second search of his home. He also argues that, even if there was evidence that the scale found during the second search was used in association with the marijuana found during the search, that would only be a misdemeanor, not a felony purpose.

{¶20} The State notes that, under Section 2923.24(B)(3), possession of any device or instrument "commonly used for criminal purposes under circumstances indicating the item is intended for criminal use[ ]" is prima-facie evidence of criminal purpose. It argues that there was evidence to support Mr. Grondin's conviction because Sergeant Camarillo testified that digital

scales are used by drug purchasers to ensure that they do not get cheated. The State also argues that this case resembles *State v. Painson*, 9th Dist. Summit No. 24164, 2008-Ohio-6623, and *State v. Higgins*, 9th Dist. Summit No. 27700, 2018-Ohio-476. In *Painson*, officers discovered a suitcase during an inventory search of the defendant's vehicle that contained a digital scale, a box of Ziplock baggies, and a small amount of marijuana. This Court determined that, even though the scale did not contain any drug residue, a scale and baggies are commonly used for a criminal purpose. *Painson* at ¶ 10. In *Higgins*, this Court concluded there was sufficient circumstantial evidence that the defendant intended to use a scale in the commission of a felony because he was also found guilty of multiple felony drug-related offenses. *Higgins* at ¶ 24.

{¶21} Both of Mr. Grondin's drug possession offenses were felonies of the fifth degree. According to Sergeant Camarillo, the scale was on the same table as the Alprazolam pills and was near the safe containing the amphetamine pills. Viewing the evidence in a light most favorable to the State, we conclude that there was sufficient circumstantial evidence from which the jury could find that Mr. Grondin intended to use the scale in the commission of a felony. *See* id.; *State v. Hemphill*, 8th Dist. Cuyahoga No. 96409, 2011-Ohio-5395, ¶ 25-27. Mr. Grondin's third assignment of error is overruled.

III.

**{¶22}** Mr. Grondin's assignments of error are overruled. The judgment of the Lorain County Court of Common Pleas is affirmed.

Judgment affirmed.

———

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Lorain, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(C). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed to Appellant.

JENNIFER HENSAL
FOR THE COURT

TEODOSIO, P. J.
CONCURS.

CARR, J.
CONCURRING IN PART, AND DISSENTING IN PART.

{¶23} I respectfully dissent from the majority's judgment to the extent it concludes that the State presented sufficient evidence to support a felony conviction for possession of criminal tools. The facts of this case are unlike those of *State v. Higgins*, 9th Dist. Summit No. 27700, 2018-Ohio-476, or *State v. Painson*, 9th Dist. Summit No. 24164, 2008-Ohio-6623.

{¶24} In *Higgins*, there was testimony that Higgins sold heroin and used the scale to weigh it. *Id.* at ¶ 24. The same cannot be said here. The drugs cited as evidence to support the conviction in the instant appeal were pills. Nothing in the record suggests that the scale would have been used to weigh pills.

{¶25} In *Painson*, the scale was found along with baggies and there was testimony indicating both items were used together in drug trafficking; the scale would be used to weigh drugs and the baggies would be used to package them. *Id.* at ¶ 9. Moreover, a drug dog alerted as to the presence of a controlled substance when sniffing the trunk and the suitcase found inside the trunk. *Id.* The scale and baggies were found inside the suitcase. *Id.* Thus, the facts in *Painson* are markedly different from those before this Court.

{¶26} Accordingly, I cannot say that the State presented sufficient evidence to support a felony conviction for possession of criminal tools.

APPEARANCES:

RICK FERRARA, Attorney at Law, for Appellant.

J.D. TOMLINSON, Prosecuting Attorney, and BRIAN P. MURPHY, Assistant Prosecuting Attorney, for Appellee.