**[This opinion has been published in *Ohio Official Reports* at 89 Ohio St.3d 257.]**

GAMBLE ET AL., APPELLANTS, *v*. DOBROSKY, APPELLEE.

[Cite as *Gamble v. Dobrosky*, 2000-Ohio-150.]

*Fire safety—Ohio Fire Code—Fire hydrants—Compatibility of fire hose connections with fire hydrants—Word "compatible" in Ohio Adm.Code 1301:7-7-05(B)(6), construed and applied.*

(No. 99-1311—Submitted April 12, 2000 at the Geauga County Session—Decided July 12, 2000.)

APPEAL from the Court of Appeals for Lucas County, No. L-98-1293.

_____

{¶ 1} The Lucas County Board of Commissioners ("Board of Commissioners"), appellant, operates a public water supply system in several unincorporated areas in Lucas County, Ohio. This system contains approximately 1,500 fire hydrants, which are located within the service areas of the numerous fire departments. All the hydrants are identical; they have a standard-size main nozzle and "New York Central"[1] threads on the two side nozzles.

{¶ 2} Jerusalem Township, one of the unincorporated areas, has forty-two of the county's fire hydrants within its jurisdiction. Jerusalem Township has fire hoses with different threads, *i.e.,* National Standard threads. Jerusalem Township must use adapters on their fire hoses to connect to the side nozzle threads on the hydrants. When the Board of Commissioners refused to replace the New York Central side nozzle threads with National Standard threads, Jerusalem Township Fire Chief, Frank Dobrosky, appellee, issued a citation to Larry L. Gamble, the former Lucas County Sanitary Engineer, appellant. The citation alleged that

_____

1. The side nozzles are also referred to as steam nozzles. Originally, they were used by railroads to fill the water tanks of their steam engines. The nozzles used by the county are called New York Central threads because the New York Central Railroad used this thread.

appellants installed "Fire Protection equipment with fire hose connections that are not compatible with the connections utilized by the local fire department," in violation of Section F 501.6 of the Ohio Fire Code.

{¶ 3} Appellants appealed the issuance of this citation to the Ohio Board of Building Appeals. After conducting a hearing, the Board of Building Appeals upheld the citation.

{¶ 4} Appellants then appealed to the Lucas County Court of Common Pleas. The court reversed the Board of Building Appeals. The court found that appellants had not violated the Ohio Fire Code.

{¶ 5} The court cited OFC F-501.6, as codified in Ohio Adm.Code 1301:7-7-05(B)(6), which requires threads "compatible" with the connections utilized by the local fire department. The court considered the definition of "compatible" as found in the Random House Dictionary of the English Language (2 Ed.1987), and found it required the capability of coexisting in harmony. Thus, the court determined that the Ohio Fire Code merely requires that the threads of the fire hydrants be capable of being used with the threads on the equipment used by the Jerusalem Township Fire Department. Since the township's fire department has adapters that connect to the side nozzles of the fire hydrants, the court concluded that the county fire hydrants are compatible with the township's fire equipment.

{¶ 6} The township's Fire Chief appealed to the Lucas County Court of Appeals. The court of appeals reversed. The court consulted the Merriam-Webster's Collegiate Dictionary (1996) 234, and found that "compatible" means designed to work with another device without modification; thus, the threads were not compatible.

{¶ 7} The cause is now before the court upon the allowance of a discretionary appeal.

_____

*Julie R. Bates,* Lucas County Prosecuting Attorney, and *John A. Borell,* Assistant Prosecuting Attorney, for appellants.

*Shindler, Neff, Holmes & Schlageter* and *David J. Simko,* for appellee.

_____

**FRANCIS E. SWEENEY, SR., J.**

{¶ 8} Appellants set forth several propositions of law. However, both parties agree that the pivotal issue concerns the meaning of the word "compatible" as found in Section F-501.6 of the Ohio Fire Code[2] as codified in Ohio Adm.Code 1301:7-7-05(B)(6).

{¶ 9} Ohio Adm.Code 1301:7-7-05(B)(6) provides:

"F-501.6 Threads: All threads provided for fire department connections to sprinkler systems, standpipe systems, yard hydrants or any other fire hose connection shall be *compatible* with the connections utilized by the local fire department." (Emphasis added.)

{¶ 10} The term "compatible" is not defined in the Ohio Fire Code. Therefore, we consider Ohio Adm.Code 1301:7-7-02(A)(4), which provides that terms that are not defined "shall have ordinarily accepted meanings such as the context implies."

{¶ 11} The court of appeals' majority cited the Merriam-Webster Collegiate Dictionary definition: "1. capable of existing together in harmony * * * 5. designed to work with another device or system without modification." Utilizing the part 5 definition, the court determined that the county connection was not compatible with the local department because an adapter (a modification) had to be used.

_____

2. Pursuant to R.C. 3737.82, the State Fire Marshal "shall adopt a state fire code which shall consist of rules relating to all aspects of fire safety." The statute further states that the code shall include rules relating to the installation and location of fire protection equipment.

 The State Fire Marshal adopted the National Fire Prevention Code. Ohio Adm.Code 1301:7-3-01(A). The Ohio Administrative Code further states that the rules adopted by the State Fire Marshal "shall be controlling within the state of Ohio and shall be known as the 'Ohio Fire Code.' " Ohio Adm.Code 1301:7-3-01(B).

**{¶ 12}** The dissent faulted the majority for omitting the rest of the part 5 definition. The dissent referred to the whole definition, which reads, "[D]esigned to work with another device or system without modification; *esp.* being a computer designed to operate in the same manner and use the same software as another computer." Thus, the dissent noted that part 5 of the definition was a recent addition to the definition and not in existence when the Ohio Fire Code was written.

**{¶ 13}** Appellants also claim that the court of appeals' decision to focus on part 5 of the definition instead of relying upon part 1 of the definition, *i.e.,* "capable of existing together in harmony," was erroneous. We agree.

**{¶ 14}** Both the Random House Dictionary and the Merriam-Webster Collegiate Dictionary define "compatible" as capable of existing together in harmony. Indeed, this is the same definition found in Webster's Third New International Dictionary (1986) 463. If all three dictionaries define "compatible" in this manner, obviously this must be the ordinarily accepted meaning of the word. Thus, we find that the court of appeals' reliance on the fifth part of the definition is too restrictive.

**{¶ 15}** Moreover, we agree with appellants and the dissent that if the drafters of the Ohio Fire Code wanted to require identical threads, they would have used the term "identical" rather than "compatible" in Ohio Adm.Code 1301:7-7-05(B)(6). However, the drafters declined to do so. Therefore, since the term "compatible" is used in the code, we apply the ordinary meaning of that term.

**{¶ 16}** Here, the record reflects that adapters are available which allow the fire department's equipment to connect to the side nozzles of the fire hydrants that are part of the county system. The record also establishes that the Jerusalem Township Fire Department has these adapters and uses them to access the water supply system. Thus, the use of these adapters renders the threads capable of existing together in harmony or "compatible," as defined by all three dictionaries. Although appellee argues that the use of adapters to connect to the fire hydrants

creates potential problems and dangers, we find no support in the record for such an assertion.

{¶ 17} We believe our interpretation is logical for yet another reason. If the county was required to replace the New York Central threads with National Standard threads to satisfy this township, what would prevent the other unincorporated areas serviced by the county from demanding that the county change their hydrant threads as well? The record reveals that the cost to change the side nozzle hydrant threads is approximately $140 per hydrant. The county system contains approximately 1,500 hydrants. This could become a costly endeavor for the county.

{¶ 18} Accordingly, we find that with the use of an adapter, the threads on the fire hydrants are capable of being used with the threads utilized by the Jerusalem Township Fire Department. Therefore, we hold that the county system of hydrants is compatible with the township's fire hoses. Appellants did not violate Ohio Adm.Code 1301:7-7-05(B)(6). The court of appeals' judgment is reversed, and the judgment of the common pleas court is reinstated.

*Judgment reversed.*

MOYER, C.J., DOUGLAS, COOK and LUNDBERG STRATTON, JJ., concur.

RESNICK and PFEIFER, JJ., dissent.

————————————

**PFEIFER, J., dissenting.**

{¶ 19} Those of us who grew up in small towns remember the familiar wail of the firehouse siren. It called in farmers from fields, barbers from behind their chairs, and lawyers from lunch, to respond to a neighbor's call for help. The allure of the alarm may have been replaced by the banality of the beeper, but the core idea, neighbors helping neighbors, still beats in the heart of local fire departments all over this state. Local fire departments form the first line of defense, and bring local knowledge to the fight when others come to help.

**{¶ 20}** The Ohio Administrative Code recognizes the important role of local fire departments. The majority errs when it makes this case about the definition of "compatible." Ohio Adm.Code 1301:7-7-05(B)(6) puts the onus on the county to make threads compatible with those used by the local fire department, not vice versa. The local threads are the ones that already exist—it is the county that must make the match. As it now stands, it is the local departments that must make their equipment compatible with the county threads, through the use of adapters. That is obviously not the intent of the Administrative Code section at issue. The responsibility of compatibility is with the county, not the local fire departments. Otherwise, Ohio Adm.Code 1301:7-7-05(B)(6) would call for connections *adaptable* for use by the local departments.

**{¶ 21}** The increased expense of changing threads, cited by the majority as an additional reason for deciding against the local departments, does not hold water. What local fire departments represent—self-sufficiency, local control, and unity— is priceless, and if not priceless, is worth more than $140 a hydrant.

RESNICK, J., concurs in the foregoing dissenting opinion.

———————————