DECISION AND JOURNAL ENTRY
 INTRODUCTION {¶ 1} Christopher Fogler admitted that, while standing in the front yard of Greg Tumbiola's apartment, he loaded a shotgun, cocked the hammer, and aimed at the front door, but he claimed the gun accidentally discharged. He was convicted of violating Section 2923.161(A)(1) of the Ohio Revised Code for knowingly discharging a firearm into an occupied structure, a second-degree felony with a gun specification. He received an aggregate sentence of five years in prison. Mr. Fogler has appealed, arguing that the trial court incorrectly: (1) admitted expert opinion testimony from a detective who was not properly qualified as an expert and admitted photographs of a ballistics test that were not timely disclosed to the defense; (2) refused to instruct the jury on a lesser included offense; and (3) refused to instruct the jury on the defense of accident. This Court affirms because: (1) the trial court correctly admitted Detective Thomas's expert opinion testimony and the photographs of his test firing of the shotgun; (2) *Page 2 
Section 2923.162(A)(2) of the Ohio Revised Code is not a lesser included offense of Section 2923.161(A)(1); and (3) the jury instructions were sufficient to address the issue of accident.
 BACKGROUND {¶ 2} Jessica Snider and Greg Tumbiola testified that they were alone in the apartment late at night when Christopher and Andrew Fogler arrived outside with Mike Depew. They heard the men shouting and glass breaking. Mr. Tumbiola testified that he looked out the window and saw one of the men had a shotgun pointed at the front door. Mr. Tumbiola immediately ran out the back door to get help while Ms. Snider stayed hidden inside, and, a moment later, they heard a gunshot. Ms. Snider testified that she was cut by shattered glass from the front window. Just after the shot, she heard the men run to a truck and take off fast.
 {¶ 3} According to the testimony, the gunshot happened after an evening filled with several verbal and physical altercations between Mr. Tumbiola and his friends against his neighbor, Andrew Fogler, and his neighbor's friend, Mike Depew. Neither Ms. Snider nor Mr. Tumbiola had ever seen the Defendant, Christopher Fogler, before he stood in the yard with a gun aimed at the apartment.
 {¶ 4} Christopher Fogler testified that he was at home asleep when he was awakened by a call from his younger brother, Andrew, telling him that he and a friend had just been assaulted and needed help. Christopher said that he grabbed his shotgun and a box of shells because Andrew said the attackers were in the military. According to Christopher, he went to Mike Depew's house to pick up his brother and Mike Depew. He drove them over to Andrew's apartment to retrieve Mike Depew's truck.
 {¶ 5} When they arrived, Andrew's neighbor's apartment was dark, but rather than simply retrieving the truck, Mr. Depew ran toward Mr. Tumbiola's apartment and broke a front *Page 3 
window with a baseball bat he had found in Mr. Fogler's truck. Christopher Fogler testified that he broke the front storm door window with the butt of the shotgun. According to him, he heard someone yell something about someone having a gun, so he backed away from the door, cocked the shotgun, raised it to his shoulder, and aimed it at the front door for protection. He claimed he then tried to call 911, but his cell phone was not on his belt clip so he bent down to feel around for it on the grass, while holding the gun with his other hand. When he saw someone run from the back of the apartment, he quickly jumped up and somehow the gun discharged into the front window of the apartment.
 {¶ 6} The maintenance man for the apartment complex, who had not been involved in the fights earlier that evening, testified that he saw the three men arrive at Mr. Tumbiola's apartment late that night. He testified that, as Mike Depew and Andrew Fogler were leaving after Mike had smashed the window, a man he did not recognize approached the front door and broke the storm window with the butt of a shotgun. After that, the man "pointed the shotgun . . . right at the window in the door and shot the gun." He testified the shooter was standing straight up with the stock of the gun against his shoulder and looked "like he was aiming right at the building." According to Mr. Brown, the man shot the gun directly into the window then shouted, "[t]his isn't over. We'll be back to kill you."
 {¶ 7} Detective Scott Thomas testified that he investigated the shooting, beginning just minutes after it was reported. He described the damage to the apartment, differentiating between damage he believed to have been caused by the shotgun blast and the baseball bat. He explained measurements and photographs taken at the scene and a test firing of the weapon Mr. Fogler identified as the one he had used. The detective concluded from the test firing that Mr. Fogler *Page 4 
was standing upright at the time of the blast and shot the gun straight into the living-room window.
 EXPERT TESTIMONY {¶ 8} Mr. Fogler's first assignment of error is that the trial court incorrectly allowed expert opinion testimony from a detective who was not properly qualified as an expert in the field of ballistics and allowed photographs of ballistics tests that were not timely provided to him in discovery. Mr. Fogler has challenged Detective Thomas's qualifications to testify as an expert regarding the test firing of the shotgun. Rule 702(B) of the Ohio Rules of Evidence provides that a witness may testify as an expert if he "is qualified as an expert by specialized knowledge, skill, experience, training, or education regarding the subject matter of the testimony." The rule may be satisfied by on-the-job training and experience. See State v. Mack,73 Ohio St. 3d 502, 511 (1995) (holding a detective with five years of experience in firearm and tool mark examination who was trained by a twenty-five-year veteran was qualified as a ballistics expert).
 {¶ 9} In this case, Detective Thomas testified that he has been a detective for 20 years and has extensive education and training in criminal justice. He has received firearms training through various police departments, including "the firing of weapons, . . . the trajectory, distance, time travel based on how far it's moving, how much it's going to drop and the space, . . . velocity, the actual power that's exerted through the weapon." He also testified about his experience investigating crime scenes to determine firing angles and distances, including specific experience with scenes involving shotguns. The record reflects that Detective Thomas met the requirements of Rule702(B) to testify about the results of the weapon test he conducted in this case. To the extent that Mr. Fogler's first assignment of error addresses Detective Thomas's qualifications under Rule 702(B) of the Ohio Rules of Evidence, it is overruled. *Page 5 
 {¶ 10} As part of his first assignment of error, Mr. Fogler has also argued that the trial court incorrectly admitted two photographs showing the target Detective Thomas used when he test fired Mr. Fogler's shotgun. Under Rule 16(B)(1)(c) of the Ohio Rules Criminal Procedure, at a defendant's request, a prosecutor must make documents, photographs, and tangible objects available for inspection and copying. Subpart (E)(3) of Rule 16 provides that, if the prosecutor fails to comply with this rule, the court may order disclosure, grant a continuance, or refuse to admit the undisclosed items into evidence at trial. The Ohio Supreme Court has held that a criminal defendant is not prejudiced by the admission of undisclosed evidence if he does not move for a continuance when the evidence is offered at trial. State v. Wiles,59 Ohio St. 3d 71, 80 (1991) (citing State v. Edwards, 49 Ohio St. 2d 31,42-43 (1976)). In Wiles, the Supreme Court held that the failure to exclude the evidence was not reversible error because the violation of Rule 16 was not willful, the defendant had not shown that foreknowledge of the evidence would have helped his defense, and no prejudice resulted from the failure to disclose the information ahead of time. Id.
 {¶ 11} Mr. Fogler requested discovery, but did not receive the photographs of the weapon test before the prosecutor proffered them at trial. Although Mr. Fogler objected to admission of the photographs, he did not move for a continuance. The trial court asked Mr. Fogler's lawyer, "What do you want to do with [the photographs]?" He responded that he would leave that to the court's discretion, but specified that he did not want a continuance. The trial court had previously arranged to dismiss the jury for the day following the State's direct examination of Detective Thomas. Thus, Mr. Fogler's lawyer had until the next morning to prepare to cross-examine the detective. His attorney vigorously cross-examined Detective Thomas about his testing method and the conclusions to be drawn from the results. Mr. Fogler *Page 6 
did not show that additional foreknowledge of the photographs would have helped his case. Finally, the record does not indicate a willful violation of Rule 16. The prosecutor told the trial court that he "just got [the photographs] the other day and . . . erroneously thought that [Mr. Fogler's lawyer] spoke with Detective Thomas. . . ." Therefore, Mr. Fogler has not demonstrated that the admission of the photographs was reversible error. His first assignment of error is overruled.
 LESSER INCLUDED OFFENSE {¶ 12} Mr. Fogler's second assignment of error is that the trial court incorrectly refused to instruct the jury on a lesser included offense. Under Rule 31(C) of the Ohio Rules of Criminal Procedure and Section 2945.74 of the Ohio Revised Code, a jury may consider lesser included offenses in addition to the crime charged. Thus, when the evidence supports it, a jury must be instructed on lesser included offenses.State v. Deem, 40 Ohio St. 3d 205, 208 (1988). The Ohio Supreme Court has provided a three-prong test to determine whether an offense is a lesser included offense of another. First, a lesser included offense "carries a lesser penalty than the other." Id. at paragraph three of the syllabus (citing State v. Kidder, 32 Ohio St. 3d 279 (1987)). Second, "the greater offense cannot, as statutorily defined, ever be committed without the lesser offense, as statutorily defined, also being committed, and [third,] some element of the greater offense is not required to prove the commission of the lesser offense." Id.
 {¶ 13} Mr. Fogler was convicted of improperly discharging a firearm at or into a habitation in violation of Section 2923.161(A)(1) of the Ohio Revised Code. That section provides that, "[n]o person, without privilege to do so, shall knowingly . . . [discharge a firearm at or into an occupied structure that is a permanent or temporary habitation of any individual." Mr. Fogler has argued that Section 2923.162(A)(2), which describes the discharging of a firearm *Page 7 
at or near a prohibited premises, is a lesser included offense of improperly discharging a firearm at or into a habitation. That section provides that, "[n]o person shall . . . discharge a firearm on a lawn, park, pleasure ground, orchard, or other ground appurtenant to a schoolhouse, church, or inhabited dwelling, the property of another, or a charitable institution." R.C. 2923.162(A)(2).
 {¶ 14} Although Section 2923.162(A)(2) carries a lesser penalty than the offense Mr. Fogler was convicted of committing, it does not satisfy the second prong of the test because it is possible to commit the offense of improperly discharging a firearm at or into an occupied structure without violating Section 2923.162(A)(2). The lesser offense is defined in terms of where the firearm is located when it is discharged, while the greater offense is defined in terms of where the firearm is aimed when it is discharged. As long as the offender is not located on "a lawn, park, pleasure ground, orchard, or other ground appurtenant to a schoolhouse, church, or inhabited dwelling, the property of another, or a charitable institution," discharging a firearm "at or into an occupied structure that is a permanent or temporary habitation of any individual" will not violate Section 2923.162(A)(2). For example, a person standing on his own porch shooting into his neighbor's house would violate Section 2923.161(A)(1), but not Section 2923.162(A)(2). Therefore, Section 2923.162(A)(2) is not a lesser included offense of Section 2923.161(A)(1). Mr. Fogler's second assignment of error is overruled.
 ACCIDENT INSTRUCTION {¶ 15} Mr. Fogler's third assignment of error is that the trial court incorrectly refused to instruct the jury on the defense of accident. Mr. Fogler was charged with improperly discharging a firearm into an occupied structure. See R.C. 2923.161(A)(1). The trial court instructed the jury that it could not find him guilty of that crime unless it found "beyond a reasonable doubt that . . . Mr. Fogler, without privilege to do so, knowingly discharged a firearm at or into an *Page 8 
occupied structure that was a permanent or temporary habitation of any individual." The trial court further explained that, "a person acts knowingly, regardless of his purpose, when he is aware that his conduct will probably cause a certain result or he is aware his conduct will probably be of a certain nature. A person has knowledge of circumstances when he is aware that such circumstances probably exist." See also R.C. 2901.22(B).
 {¶ 16} The defense of accident is merely an attempt to refute the state's evidence as to a particular element of the offense, specifically, the culpable mental state. State v. Staats, 9th Dist. No. 15706, 1994 WL 122266 at *4-5 (Apr. 13, 1994). In this case, the trial court's instructions correctly explained that, in order to find Mr. Fogler guilty, the jury had to find, beyond a reasonable doubt, that he knowingly discharged the firearm. This precludes a finding that the firearm discharged accidentally. Therefore, "[t]he absence of accident was necessarily part of the instructions that were delivered by the trial court." Id. at *5. The trial court did not err by refusing to give a jury instruction about accident because the jury instructions as a whole were sufficient to address the issue of accident. Mr. Fogler's third assignment of error is overruled.
 CONCLUSION {¶ 17} Mr. Fogler's conviction is affirmed because the trial court correctly admitted Detective Thomas's expert opinion testimony and the photographs of his test firing, Section 2923.162(A)(2) of the Ohio Revised Code is not a lesser included offense of Section 2923.161(A)(1), and the jury instructions were sufficient to address the issue of accident. The judgment of the Medina County Court of Common Pleas is affirmed.
 Judgment affirmed. *Page 9 
The Court finds that there were reasonable grounds for this appeal.
We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Medina, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App. R. 27.
Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App. R. 22(E). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App. R. 30.
Costs taxed to appellant.
 CARR, P. J. SLABY, J. CONCUR *Page 1