**[Cite as *State v. Krowiak*, 2022-Ohio-413.]**

| STATE OF OHIO | ) | IN THE COURT OF APPEALS |
|---|---|---|
| | )ss: | NINTH JUDICIAL DISTRICT |
| COUNTY OF MEDINA | ) | |

| STATE OF OHIO | C.A. No. 21CA0003-M |
|---|---|
| Appellee | |
| | |
| v. | APPEAL FROM JUDGMENT ENTERED IN THE |
| BRIAN KROWIAK | MEDINA MUNICIPAL COURT COUNTY OF MEDINA, OHIO |
| Appellant | CASE No. 20CRB00697 |

DECISION AND JOURNAL ENTRY

Dated: February 14, 2022

---

SUTTON, Judge.

{¶1} Defendant-Appellant Brian Krowiak appeals the judgment of the Medina Municipal Court related to his conviction for criminal damaging. For the reasons below, we affirm the judgment of the trial court.

I.

{¶2} On June 28, 2020, J.D. and his six-year-old son were on his Litchfield Township property and had just entered the barn when J.D. heard the sound of a bullet striking the wall of the barn. Earlier that morning, J.D., a former member of the United States Marine Corps, heard gun fire that he recognized as coming from a rapid-fire weapon emanating from north of his property line. As the bullet struck his barn, J.D. could hear the same rapid-fire weapon and believed the gunfire was now striking the barn while he and his son were inside.

{¶3} After the bullet struck his barn, J.D.'s "first concern was the safety [of] [himself] and [his] family, so [he] immediately opened the barn door and started shouting at the top of

[his] lungs to cease fire and [for the shooter] to stop." When the shooting did not cease, J.D. jumped into his car and traveled to the property owned by Gary Stout to tell whoever was shooting into his property to stop. Mr. Stout had a mound of dirt on his property that was used as a backstop for firing weapons. Numerous shooting targets were set up in front of the mound. The backstop was located along the south end of Mr. Stout's property, which is located to the north of J.D.'s property. A third property is located between Mr. Stout's property and J.D.'s property.

{¶4} J.D. testified he heard gunfire "year-round" coming from the Stout property. On a previous occasion, J.D. heard bullets flying over his head while on his own property and called the Sheriff. On that occasion, however, the Sheriff's deputies told J.D. "nothing really could be done because there was no property damage and [the deputies] could not find a point of impact where the round would have hit anything on [his] property."

{¶5} When J.D. arrived at the Stout property on the day that the bullet struck his barn, he encountered Mr. Krowiak firing a rapid-fire weapon in the direction of his property. J.D. testified:

> I approached [Mr. Krowiak], * * * when I pulled in, [Mr. Krowiak] was still shooting, so as I was approaching him, I was waving my arms and telling him to stop because my family [was] still at * * * [the] barn [and Mr. Krowiak was] shooting in that direction. I [had] asked my wife to take [the children] to safety, but I didn't know what [my family's] situation was at that time.

{¶6} J.D. testified that Mr. Krowiak first seemed stunned when he told him that his barn had just been struck by a bullet. According to J.D., Mr. Krowiak stopped shooting and sat down on the ground. J.D. had already called the Medina County Sheriff, so after speaking with Mr. Krowiak, he went to the end of the Stout driveway to wait for law enforcement to arrive.

However, after J.D. went to the end of the driveway to wait for the sheriff, "[Mr. Krowiak] started to shoot again, which was kind of unbelievable[.]"

{¶7} Deputy Sheriff Frank Telatko and Sergeant David Pries, both officers with the Medina County Sheriff's Office, responded to the Stout property. After arriving at the scene, Deputy Telatko remained at the Stout residence to question Mr. Krowiak, while Sergeant Pries went to J.D.'s property to view the damage to J.D.'s barn.

{¶8} Deputy Telatko observed Mr. Krowiak's vehicle parked near the backstop at the Stout residence with several weapons in the back of the vehicle. Mr. Krowiak told Deputy Telatko he was building and assembling "some ARs" and was shooting the weapons in order to test their functionality. Mr. Krowiak also told Deputy Telatko the weapon he was firing was an AR-15 rifle.

{¶9} At J.D.'s property, Sergeant Pries observed three bullet holes in the roof and walls of the barn. The two holes in the roof appeared to be entry and exit holes, and there was also a single hole in one of the barn walls. Sergeant Pries noted the holes appeared to be consistent with bullet holes and also appeared to be new damage to the barn.

{¶10} After the Sheriff's Office concluded their investigation, Deputy Telatko issued a summons for Mr. Krowiak to appear because the "course of the investigation led [him] to the conclusion that [Mr. Krowiak] had discharged a firearm in a reckless manner which caused property damage to [J.D.'s] property[.]" Mr. Krowiak was charged with one count of criminal damaging in violation of R.C. 2909.06(A)(2).

{¶11} Mr. Krowiak, appearing pro se, filed numerous objections, a motion to dismiss, and a motion to suppress the statements he made to police on the grounds that he had not received the proper *Miranda* warnings. After a hearing, the trial court denied Mr. Krowiak's

objections and motion to dismiss. However, the trial court granted Mr. Krowiak an evidentiary hearing on his motion to suppress.

{¶12} Prior to the suppression hearing, counsel entered an appearance for Mr. Krowiak and subsequently notified the trial court of Mr. Krowiak's desire to withdraw the motion to suppress. The trial court initially declined to dismiss the motion and moved forward with the hearing. At the hearing, however, counsel for Mr. Krowiak again indicated Mr. Krowiak wished to withdraw his motion. The trial court questioned Mr. Krowiak to make sure that was what he wished to do. Mr. Krowiak indicated he indeed wished to withdraw his motion and his motion was then withdrawn.

{¶13} The case proceeded to a bench trial. At trial, the judge heard testimony from the victim, J.D., as well as from Deputy Telatko and Sergeant Pries. Mr. Krowiak did not testify or present any other evidence in his own defense. Mr. Krowiak was found guilty on one count of criminal damaging or endangering in violation of R.C. 2909.06(A)(2), a misdemeanor of the second degree. At sentencing, the trial court issued a two hundred and seventy-five dollar fine and ordered Mr. Krowiak to pay the victim five hundred dollars in restitution.

{¶14} Mr. Krowiak filed a timely appeal, raising seven assignments of error for review. We have re-ordered and combined certain assignments of error to facilitate our analysis.

II.

**ASSIGNMENT OF ERROR I**

**THE TRIAL COURT ERRED, TO THE SUBSTANTIAL PREJUDICE OF [MR. KROWIAK], BY OVERRULING [MR. KROWIAK'S] MOTION FOR ACQUITTAL PURSUANT TO CRIMINAL RULE 29.**

**ASSIGNMENT OF ERROR III**

**THE CONVICTION FOR CRIMINAL DAMAGING UNDER [R.C.] 2909.06(A)(2) WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE AND THEREFORE MUST BE VACATED AND REVERSED.**

**ASSIGNMENT OF ERROR IV**

**THE TRIAL COURT COMMITTED REVERSIBLE ERROR, WHEN IT ENTERED JUDGMENT AGAINST [MR. KROWIAK] WHEN THE EVIDENCE WAS INSUFFICIENT AS A MATTER OF LAW TO SUSTAIN A CONVICTION FOR CRIMINAL DAMAGING UNDER [R.C.] 2909.06(A)(2) TO SUSTAIN A CONVICTION.**

{¶15} In his first and fourth assignments of error, Mr. Krowiak asks this Court to find that his conviction is legally insufficient, and in his third assignment of error he asserts his conviction is against the manifest weight of the evidence. Mr. Krowiak turns to arguments of statutory interpretation to allege his conviction is insufficient because R.C. 2909.06(A)(2) does not include a firearm within the meaning of an "inherently dangerous agency." Specifically, Mr. Krowiak argues the State did not produce any evidence demonstrating he created "a substantial risk of physical harm to any property of another * * * recklessly, by means of * * * [an] inherently dangerous agency or substance."

{¶16} Further, in his third assignment of error, while Mr. Krowiak claims his conviction is against the manifest weight of the evidence, he does not develop a manifest weight argument. Because he has not developed such an argument, this Court will not address it. *See State v. Franks*, 9th Dist. Summit No. 28533, 2017-Ohio-7045, ¶ 16 ("Where an appellant fails to develop an argument in support of his assignment of error, this Court will not create one for him."). Instead, Mr. Krowiak makes a statutory interpretation argument based on what he asserts are conflicting statutes. Specifically, he argues the State improperly charged him with criminal

damaging pursuant to R.C. 2909.06(A)(2), when he should have been properly charged under R.C. 2923.162. For the following reasons, we disagree with Mr. Krowiak's arguments.

**Standard of Review**

{¶17} "We review a denial of a defendant's Crim.R. 29 motion for acquittal by assessing the sufficiency of the State's evidence." *State v. Frashuer*, 9th Dist. Summit No. 24769, 2010-Ohio-634, ¶ 33. "Whether a conviction is supported by sufficient evidence is a question of law that this Court reviews de novo." *State v. Williams*, 9th Dist. Summit No. 24731, 2009-Ohio-6955, ¶ 18, citing *State v. Thompkins*, 78 Ohio St.3d 380, 386 (1997). The relevant inquiry is whether the prosecution has met its burden of production by presenting sufficient evidence to sustain a conviction. *Thompkins* at 390 (Cook, J., concurring). For purposes of a sufficiency analysis, this Court must view the evidence in the light most favorable to the State. *Jackson v. Virginia*, 443 U.S. 307, 319 (1979). We do not evaluate credibility, and we make all reasonable inferences in favor of the State. *State v. Jenks*, 61 Ohio St.3d 259, 273 (1991). The evidence is sufficient if it allows the trier of fact to reasonably conclude that the essential elements of the crime were proven beyond a reasonable doubt. *Id*.

**R.C. 2909.06(A)(2)**

{¶18} Mr. Krowiak was charged and convicted of one count of criminal damaging or endangering pursuant to R.C. 2909.06(A)(2), which states:

> No person shall cause, or create a substantial risk of physical harm to any property of another without the other person's consent: [r]ecklessly, by means of fire, explosion, flood, poison gas, poison, radioactive material, caustic or corrosive material, or other inherently dangerous agency or substance.

In convicting him under R.C. 2909.06(A)(2), Mr. Krowiak argues the trial court "erroneously attempted to equate the term 'inherently dangerous agency' with 'inherently dangerous instrumentality.'" Mr. Krowiak further argues that though "[t]his subsection [of the law] clearly

envisages and encompasses chemical spills, bio-hazardous substances, poisons, etc.[,] [i]t does not [encompass] * * * firearms." Although the legislature has not defined firearms as "inherently dangerous instrumentalities," Mr. Krowiak correctly notes, and does not dispute, that Ohio courts have long held that firearms are inherently dangerous instrumentalities. "[A] firearm is an inherently dangerous instrumentality, the use of which is likely to produce death**."** *State v. Seiber*, 56 Ohio St.3d 4, 14 (1990), quoting *State v. Widner*, 69 Ohio St.2d 267, 270 (1982). However, Mr. Krowiak asserts that an inherently dangerous *instrumentality* is different than an inherently dangerous *agency* and is, therefore, not within the meaning of R.C. 2909.06(A)(2).

{¶19} For the following reasons, we disagree.

### "Agency" and "Instrumentality"

{¶20} Pursuant to R.C. 1.42, when reading a statute, "[w]ords and phrases shall be read in context and construed according to the rules of grammar and common usage." To determine the common usage of a word, dictionaries provide the ordinarily accepted meaning of words. *See Gamble v. Dobrosky*, 89 Ohio St.3d 257, 259 (2000). When the language of a statute is plain and unambiguous, there is no need for a court to apply rules of statutory interpretation, because "plain and unambiguous statutory language may not be ignored regardless of policy implications." *Lorain Cty. Bd. of Commrs. v. U.S. Fire Ins. Co.,* 81 Ohio App.3d 263, 268, (9th Dist.1992); *see also State v. Kreischer*, 109 Ohio St.3d 391, 2006-Ohio-2706, ¶ 12, citing *State v. Muncie*, 91 Ohio St.3d 440, 447 (2001); *Symmes Twp. Bd. of Trustees v. Smyth*, 87 Ohio St.3d 549, 553 (2000).

{¶21} Here, the language of R.C. 2909.06(A)(2) is plain and unambiguous, so there is no need to apply rules of statutory interpretation. Though the Ohio General Assembly has never defined either the term "inherently dangerous instrumentality" or "inherently dangerous agency"

in a statute, the term "inherently dangerous instrumentality" is well established in Ohio case law as describing a firearm. *See State v. Lockett*, 49 Ohio St.2d 48, 60 (1976), reversed on other grounds; *State v. Johnson*, 56 Ohio St.2d 35, 39 (1978); *State v. Widner*, 69 Ohio St.2d 267, 270 (1982); *see Seiber, supra*; *State v. Dunlap*, 73 Ohio St.3d 308, 316 (1995). A review of Ohio case law also shows the term "inherently dangerous agency" has been specifically used to reference a firearm. In *Huber v. Collins*, 38 Ohio Law Abs. 551 (2nd Dist.1942), the court wrote "**[a] loaded gun is a dangerous agency**, so recognized in the law" when describing the high degree of care that should be utilized when handling a loaded firearm. (Emphasis added.) Additionally, the Ohio Supreme Court has used the words "agency" and "instrumentality" interchangeably. *See Allison v. Fiscus*, 156 Ohio St. 120, 124-125 (1951).

{¶22} According to Merriam-Webster's dictionary, "agency" and "instrumentality" mean the same thing. Specifically, Merriam-Webster's dictionary defines the noun "agency" as "a person or thing through which power is exerted or an end is achieved: INSTRUMENTALITY, MEANS[.]" Merriam-Webster.com Dictionary, https://www.merriam-webster.com/dictionary/agency, def. 3 (accessed Dec. 2, 2021)[1]. The dictionary lists "instrumentality" as a synonym for "agency." Adding further proof of the synonymous nature of the two words, the dictionary entry for "instrumentality" also lists "agency" as a synonym for "instrumentality." *See* Merriam-Webster.com Dictionary, https://www.merriam-webster.com/dictionary/instrumentality, def. 2 (accessed Dec. 2, 2021). As such, the statute is unambiguous; it logically follows that a firearm, well established in Ohio case law as an

---

[1] The current definition of agency is the same definition of agency that appears in the version of Merriam-Webster's dictionary that was current the year the present version of R.C. 2909.06(A)(2) was enacted. *See Webster's Third New International Dictionary,* 40 (1993).

"inherently dangerous instrumentality," is an "inherently dangerous agency" within the meaning of R.C. 2909.06(A)(2).

**{¶23}** Thus, after reviewing the record and the evidence in the light most favorable to the State, we find the evidence in this case was sufficient for a reasonable trier of fact to conclude that the essential elements of criminal damaging, pursuant to R.C. 2909.06(A)(2), were proven beyond a reasonable doubt.

**R.C. 2909.06(A)(2) and R.C. 2923.162 are not conflicting statutes.**

**{¶24}** Mr. Krowiak also argues the state improperly charged him under R.C. 2909.06(A)(2), which he asserts is a general statute that conflicts with R.C. 2923.162, which he asserts is a specific statute. He submits that in the case of such a conflict, the specific statute is the proper charging offense over the general statute under R.C. 1.51, which sets forth parameters of statutory interpretation regarding general versus special or local provisions.

**{¶25}** However, it is only appropriate to resort to R.C. 1.51 when a conflict exists between two statutes. *Sutherland-Wagner v. Brook Park Civil Service Comm.*, 32 Ohio St.3d 323, 325 (1987). Here, no such conflict exists between the two statutes. Nothing in R.C. 2923.162 requires damage to property; it is a strict liability offense that criminalizes the conduct of discharging a firearm on or near prohibited premises, without regard to any culpable mental state. *See State v. James*, 8th Dist. Cuyahoga No. 102604, 2015-Ohio-4987, ¶ 33. On the other hand, R.C. 2909.06(A)(2) is not a strict liability offense. It is a property crime offense and the plain language of the statute requires damage to another person's property by a person's reckless behavior. As such, the statutes are not in conflict, and Mr. Krowiak's reference to R.C. 1.51 and "the judicial concepts upon which it is based are totally inapposite." *See Sutherland* at 325. In addition, further bolstering the idea that the statutes are not in conflict is the fact that our sister

district has upheld cases where the defendant was charged with both an offense under R.C. 2923.162 and R.C. 2909.06. *See State v. Jenkins*, 8th Dist. Cuyahoga No. 105881, 2018-Ohio-2397, and *State v. Henderson*, 8th Dist. Cuyahoga No. 106627, 2018-Ohio-3797.

{¶26} Just because Mr. Krowiak *could* have been charged with an offense under R.C. 2923.162, does not mean the prosecutor was required to charge Mr. Krowiak under R.C. 2923.162. Prosecutors enjoy wide discretion in charging decisions, and such decisions are generally not subject to judicial review. *See Miller-Wagenknecht v. City of Munroe Falls*, 9th Dist. Summit No. 20324, 2001 WL 1545626, *5 (Dec. 5, 2001) ("It is well settled that the government enjoys prosecutorial discretion in its charging decisions[.]"); *see also State ex rel. Master v. Cleveland*, 75 Ohio St.3d 23, 27 (1996) ("the decision whether to prosecute is discretionary, and not generally subject to judicial review"). Therefore, Mr. Krowiak's argument related to the conflict of the statutes is not well taken.

{¶27} Mr. Krowiak's first, third, and fourth assignments of error are overruled.

## ASSIGNMENT OF ERROR II

**[MR. KROWIAK WAS] DENIED DUE PROCESS OF LAW, WHEN DEFENSE COUNSEL [WITHDREW] A MOTION TO SUPPRESS STATEMENTS BASED UPON FAILURE TO MIRANDIZE [MR. KROWIAK], WHERE THE JUDGE ACKNOWLEDGES THE POTENTIAL MERITS OF THE MOTION TO SUPPRESS ON THE RECORD.**

{¶28} In his second assignment of error, Mr. Krowiak alleges he was denied effective assistance of counsel. Mr. Krowiak specifically argues he was denied effective assistance of counsel in two ways: (1) when his trial counsel withdrew his pro se motion to suppress the statements he made to the responding officers; and (2) when his trial counsel failed to present evidence from any firearms or ballistic expert witnesses. For the following reasons, we disagree.

**Effective Assistance of Counsel**

{¶29} "[I]n Ohio, a properly licensed attorney is presumed competent." *State v. Gondor*, 112 Ohio St.3d 2006-Ohio-6679, ¶ 62. To prevail on a claim of ineffective assistance of counsel, Mr. Krowiak must establish both that: (1) his counsel's performance was deficient and (2) the deficient performance prejudiced the defense. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). A deficient performance is one that falls below an objective standard of reasonable representation. *State v. Bradley*, 42 Ohio St.3d 136 (1989), paragraph two of the syllabus. To establish prejudice, "the defendant must prove that there exists a reasonable probability that, were it not for counsel's errors, the result of the trial would have been different." *Id*. at paragraph three of the syllabus. If a defendant fails to prove one prong under *Strickland*, this Court need not address the other prong. *State v. Lortz*, 9th Dist. Summit No. 23762, 2008-Ohio- 3108, ¶ 34.

{¶30} A court "must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that under the circumstances, the challenged action 'might be considered sound trial strategy.'" *Strickland* at 689, quoting *Michel v. Louisiana*, 350 U.S. 91, 101 (1955). "There are countless ways to provide effective assistance in any given case. Even the best criminal defense attorneys would not defend a particular client in the same way." *Id*. Moreover, debatable trial tactics will not constitute ineffective assistance of counsel. *State v. Clayton*, 62 Ohio St.2d 45, 49 (1980).

Withdrawal of Motion to Suppress

{¶31} Mr. Krowiak first argues that his counsel committed a "critical error" when he withdrew his motion to suppress. The crux of Mr. Krowiak's argument is that he received

ineffective assistance of counsel due to counsel's advice to withdraw, and Mr. Krowiak's subsequent withdrawal of, his motion to suppress.

**{¶32}** The Ohio Supreme Court has "rejected claims of ineffective assistance of counsel when counsel failed to file or withdrew a suppression motion when doing so was a tactical decision, there was no probability of success, or there was no prejudice to the defendant." *State v. Nields*, 93 Ohio St.3d 6, 34 (2001). This Court has recognized that a motion to suppress can be withdrawn for any number of reasons as a matter of trial strategy. *See State v. Payne*, 9th Dist. Lorain No. 18CA011383, 2019-Ohio-4218, ¶ 25 (choice not to file a motion to suppress constituted trial strategy). Here, Mr. Krowiak has not demonstrated that counsel's advice to the withdraw his motion or that the withdrawal of his motion was not a tactical decision or a matter of trial strategy. As stated above, debatable trial strategies or tactical decisions do not constitute ineffective assistance of counsel. Because Mr. Krowiak has not demonstrated that his counsel's performance was deficient and that the deficient performance prejudiced his defense as required by *Strickland*, his argument is not well taken.

Failure to Present Testimony from Expert Witnesses

**{¶33}** Next, Mr. Krowiak argues defense counsel's failure to call any firearm or ballistic experts denied him effective assistance of counsel. As stated above, debatable trial strategy does not constitute ineffective assistance of counsel. As required by the test set forth in *Strickland*, Mr. Krowiak has not demonstrated that if such expert witnesses had been called to testify as part of his defense, there was a reasonable probability that the outcome of his trial would have been different.

**{¶34}** Mr. Krowiak's second assignment of error is overruled.

**ASSIGNMENT OF ERROR V**

**THE TRIAL COURT ERRED TO THE SUBSTANTIAL PREJUDICE OF [MR. KROWIAK] BY ORDERING RESTITUTION AND IN ENTERING A CIVIL JUDGMENT AGAINST [MR. KROWIAK], WHEN THE UNCONTROVERTED TESTIMONY ESTABLISHED THAT THE PROSECUTING WITNESS HAD BEEN INDEMNIFIED BY INSURANCE PAYMENTS.**

{¶35} In his fifth assignment of error, Mr. Krowiak argues the trial court erred by ordering Mr. Krowiak to pay restitution in the amount of five hundred dollars to the victim because the victim was indemnified by his insurance policy. For the following reasons, we disagree.

{¶36} R.C. 2929.28(A)(1) states:

> If a trial court imposes restitution, the court shall determine the amount of restitution to be paid by the offender. If the court imposes restitution, the court may base the amount of restitution it orders on an amount recommended by the victim, the offender, a presentence investigation report, estimates or receipts indicating the cost of repairing or replacing property, and other information, provided that the amount the court orders as restitution shall not exceed the amount of the economic loss suffered by the victim as a direct and proximate result of the commission of the offense. * * * *If the court decides to impose restitution, the court shall hold an evidentiary hearing on restitution if the offender, victim, or survivor disputes the amount of restitution.* If the court holds an evidentiary hearing, at the hearing the victim or survivor has the burden to prove by a preponderance of the evidence the amount of restitution sought from the offender.

(Emphasis added.) R.C. 2929.28(A)(1). Here, a review of the record shows Mr. Krowiak failed to object to the amount of restitution with the trial court and no hearing was held on the issue.

{¶37} Thus, as Mr. Krowiak raises the issues pertaining to restitution for the first time on appeal, he has forfeited all arguments with respect to this issue but for that of plain error. *See State v. Greathouse*, 9th Dist. Summit No. 27782, 2017-Ohio-6870, ¶ 9. Mr. Krowiak has not argued plain error on appeal. Due to his failure to raise a plain error argument, we decline to sua sponte fashion one and then address it. *See Greathouse* at ¶ 21; App.R. 16(A)(7) (requiring

briefs to have "[a]n argument containing the contentions of the appellant with respect to each assignment of error * * * with citations to the authorities * * * on which appellant relies."); *State v. Cross*, 9th Dist. Summit No. 25487, 2011-Ohio-3250, ¶ 41 ("While a defendant who forfeits such an argument may still argue plain error on appeal, this court will not sua sponte undertake a plain-error analysis if a defendant fails to do so."), citing *State v. Hairston*, 9th Dist. Lorain No. 05CA008768, 2006-Ohio-4925, ¶ 11 ("Accordingly, as Appellant failed to develop his plain error argument, we do not reach the merits and decline to address this argument.").

**{¶38}** Mr. Krowiak's fifth assignment of error is overruled.

### ASSIGNMENT OF ERROR VI

**THE STATUTORY SECTION, [R.C.] 2909.06(A)(2) IS VOID FOR VAGUENESS, AS IT FAILS TO PROVIDE NOTICE TO A REASONABLE MAN OF THE OFFENSE INVOLVING A FIREARM.**

**{¶39}** In his sixth assignment of error, Mr. Krowiak argues the words "inherently dangerous agency" are so vague, overbroad, and ambiguous in their meaning that they render the statute unconstitutional. However, Mr. Krowiak forfeited this alleged error by failing to properly raise it before the trial court. Accordingly, this Court declines to address it.

**{¶40}** The failure to raise a constitutional issue at the trial level forfeits the right to make a constitutional argument on appeal. *State v. Awan*, 22 Ohio St.3d 120 (1986), syllabus. While a defendant who forfeits such an argument still may argue plain error on appeal, this Court will not sua sponte undertake a plain-error analysis if the defendant fails to do so. *See State v. McCraw*, 9th Dist. Summit No. 14CA0009-M, 2015-Ohio-3809, ¶ 5; *Hairston* at ¶ 9. Mr. Krowiak has not made a plain error argument on appeal. Accordingly, this Court will not make one on his behalf.

**{¶41}** Mr. Krowiak's sixth assignment of error is overruled.

**ASSIGNMENT OF ERROR VII**

**THE TRIAL COURT ABUSED ITS DISCRETION, AND ERRED TO THE SUBSTANTIAL PREJUDICE OF [MR. KROWIAK], BY ALLOWING THE RESPONDING LAW ENFORCEMENT OFFICERS AND THE PROSECUTING WITNESS TO TESTIFY AS BALLISTIC EXPERTS, WITHOUT HAVING [FIRSTHAND] FACTUAL KNOWLEDGE, A PROPER FOUNDATION OR QUALIFICATIONS BEING ESTABLISHED ON THE RECORD.**

{¶42} In his seventh assignment of error, Mr. Krowiak argues the trial court erred and prejudiced Mr. Krowiak by allowing the opinion testimony of J.D. as to the type of weapon being used and the shooter's stance, and the opinion testimony of Deputy Telatko regarding the muzzle climb, ricochet, and type of rounds being used. Mr. Krowiak argues that the opinion testimony was not permissible because neither J.D. nor Deputy Telatko were qualified as expert witnesses. For the following reasons, we disagree.

### Standard of Review

{¶43} The admission or exclusion of evidence lies in the trial court's sound discretion. *State v. Sage*, 31 Ohio St.3d 173, 180 (1987). In order to find an abuse of discretion, we must determine that the trial court's decision was unreasonable, arbitrary, or unconscionable. *Blakemore v. Blakemore*, 5 Ohio St.3d 217 (1983).

### J.D.'s Testimony

{¶44} A careful review of the record shows when J.D. offered testimony about Mr. Krowiak's stance and the type of weapon Mr. Krowiak was using, he was not offering opinion testimony. Instead, the record shows that J.D. was offering his firsthand account of what he observed when he arrived at the Stout property.

{¶45} Additionally, the record also shows that Mr. Krowiak failed to object to this testimony at trial. "A defendant forfeits appellate review of an alleged error at trial if [he] fails

to contemporaneously object to that error at trial." *State v. Jamison*, 9th Dist. Wayne Nos. 19AP0043, 19AP0044, 2021-Ohio-1763, ¶ 21, quoting *State v. McCallum*, 9th Dist. Medina No. 08CA0037-M, 2009-Ohio-1424, ¶ 19. An objection at trial is required because as "[t]his Court has held, except for a claim of plain error, an appellant may not raise an argument for the first time on appeal*." State v. Piatt*, 9th Dist. Wayne No. 19AP0023, 2020-Ohio-1177, ¶ 20, quoting *State v. Robinson*, 9th Dist. Summit No. 28488, 2017-Ohio-7380, ¶ 12. Because Mr. Krowiak did not preserve his objection in the trial court or develop a claim of plain error on appeal, his argument regarding J.D.'s testimony is not well taken. *See Piatt* at ¶ 20; *Jamison* at ¶ 21; *McCallum* at ¶ 19.

### Deputy Telatko's Testimony

**{¶46}** As this Court has previously stated with regard to officer testimony:

> Rule 702(B) of the Ohio Rules of Evidence provides that a witness may testify as an expert if he "is qualified as an expert by specialized knowledge, skill, experience, training, or education regarding the subject matter of the testimony." The rule may be satisfied by on-the-job training and experience. *See State v. Mack*, 73 Ohio St.3d 502, 511, 653 N.E.2d 329 (1995) (holding a detective with five years of experience in firearm and tool mark examination who was trained by a twenty-five-year veteran was qualified as a ballistics expert).

*State v. Fogler*, 9th Dist. Medina No. 08CA0004-M, 2008-Ohio-5927, ¶ 8.

**{¶47}** In this case, the State laid a foundation qualifying Deputy Telatko as an expert. Here, like *Fogler*, Deputy Telatko gave testimony that he had been employed by the Medina County Sheriff's Office for 22 years. He also testified to over 12 years of military experience where he acquired familiarity with the fundamentals of multiple different weapons platforms. The record reflects that Deputy Telatko met the requirements of Evid.R. 702(B) to testify about the weapon used in this case. To the extent that this assignment of error addresses Deputy Telatko's qualifications under Evid.R. 702(B), it is overruled.

{¶48} As for Deputy Telatko's testimony regarding the type of ammunition Mr. Krowiak was using, a review of the record shows that Deputy Telatko was not offering expert testimony or inadmissible speculation when he stated the type of ammunition Mr. Krowiak was using:

| [PROSECUTOR]: | What kind of ammunition was he using? |
| [DEPUTY TELATKO]: | I asked him. He said he was using full metal jacket rounds. |

Deputy Telatko testified as to what Mr. Krowiak said to him, and this statement under Evid.R. 801(D)(2) is admissible as an admission by a party-opponent. ("statement is offered against a party and is (a) the party's own statement[.]")

{¶49} Mr. Krowiak's seventh assignment of error is overruled.

III.

{¶50} For these reasons, Mr. Krowiak's seven assignments of error are overruled and the judgment of the Medina Municipal Court is affirmed.

Judgment affirmed.

———

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Medina Municipal Court, County of Medina, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(C). The Clerk of the Court of Appeals is

instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed to Appellant.

_____
BETTY SUTTON
FOR THE COURT

CALLAHAN, J.
CONCURS.

CARR, P. J.
DISSENTING.

{¶51} I respectfully dissent from the judgment of the majority as I would conclude that Krowiak's firearm was not, as a matter of law, an "other inherently dangerous agency or substance." R.C. 2909.06(A)(2). Given the foregoing, the State failed to prove beyond a reasonable doubt that Krowiak violated R.C. 2909.06(A)(2).

{¶52} R.C. 2909.06(A)(2) prohibits causing or creating "a substantial risk of physical harm to any property of another without the other person's consent: * * * [r]ecklessly, by means of fire, explosion, flood, poison gas, poison, radioactive material, caustic or corrosive material, or other inherently dangerous agency or substance." That list does not include the term firearm or even deadly weapon, terms which are commonly found throughout the Ohio Revised Code. Instead, the General Assembly chose to use the phrase "inherently dangerous agency[,]" a phrase the legislature did not define and is not otherwise defined in the revised code.

> A well-known legal maxim is "ejusdem generis," which literally translated means "of the same kind or species." So, where in a statute terms are first used which are confined to a particular class of objects having well-known and definite

features and characteristics, and then afterwards a term is conjoined having perhaps a broader signification, such latter term is, as indicative of legislative intent, to be considered as embracing only things of a similar character as those comprehended by the preceding limited and confined terms.

*State v. Aspell*, 10 Ohio St.2d 1, 4 (1967).

{¶53} Based on the above, I cannot conclude that a firearm is similar enough in character to the other items specifically listed such that it should be included as an "other inherently dangerous agency or substance." R.C. 2909.06(A)(2). This conclusion is further supported by the fact that "any substantial doubt" as to the meaning of a statutory term or phrase "must be resolved in favor of the [defendant]." *Aspell* at 4.

{¶54} While I am deeply troubled by the actions of Krowiak, because I cannot say that his actions satisfy the elements of the crime at issue, I must conclude that the State failed to meet its burden. Accordingly, I respectfully dissent from the judgment of the majority.

APPEARANCES:

OLIVIA A. MYERS, Attorney at Law, for Appellant.

GREGORY A. HUBER, Prosecuting Attorney, for Appellee.